Allen **FRIEDMAN**; Nancy J. **Logue,**
Plaintiffs–Appellants (89–3948),
Plaintiffs–Appellees (89–4012),

v.

**ESTATE OF** Jackie **PRESSER;** Harold Friedman; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 507, Defendants–Appellees (89–3948),

Estate of Jackie Presser,
Defendant–Appellant
(89–4012).

Nos. 89–3948, 89–4012.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 31, 1991.

Decided April 11, 1991.

Robert J. Vecchio, Vecchio & Schulz, Cleveland, Ohio, and Robert S. Catz (argued), District of Columbia School of Law, Washington, D.C., for plaintiffs-appellants.

John R. Climaco, Paul S. Lefkowitz, Thomas M. Wilson (argued), Climaco, Climaco, Seminatore, Lefkowitz & Garofoli, Cleveland, Ohio, Paul J. Cambria, Jr., William M. Feigenbaum (argued), Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., and Thomas A. McCormack (argued), Motta, McCormack, Wolgamuth & Watling, Cleveland, Ohio, for defendants-appellees.

Before KEITH and KRUPANSKY, Circuit Judges, and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

Allen Friedman and Nancy Logue appeal the district court's September 19, 1989 order overruling their motion for leave to amend this *Bivens* action, which seeks monetary relief for the violation of Friedman's due process rights and for various related pendent state claims. While plaintiffs claim that Jackie Presser (one of the defendants who allegedly entrapped Friedman in an embezzlement scheme) was an FBI informant and the government withheld exculpatory information at Friedman's prior criminal trial, the district court found that plaintiffs failed to plead any facts of fraudulent concealment from which to find the relevant statute of limitations period tolled in the instant action.

Presser, now the Estate of Presser, cross appeals a portion of the district court's July 28, 1989 order denying its 12(b)(2) and 12(b)(5) motion to dismiss based on lack of personal jurisdiction resulting from insuffi-

cient service of process. The Estate claims that plaintiffs' mail service was defective because no acknowledgment form was ever returned as required by Rule 4(c)(2)(C)(ii). Moreover, the Estate argues that personal service was not timely effected under Rule 4(j), and the district court's stay of all proceedings for approximately fifteen months did not toll the 120 day limitations period for such service. For the reasons that follow, we affirm the district court's dismissal of plaintiffs' complaint.

I.

Plaintiff-appellant Allen Friedman ("A. Friedman") is a former vice president of International Brotherhood of Teamsters, Chauffeurs, Wharehousemen and Helpers of America, Local 507 ("Local 507"). In December of 1976, he suffered a massive heart attack, requiring extensive recuperation. He was subsequently offered a position with Local 507 as a "labor consultant" at a weekly salary of $1,000. A. Friedman asserts, however, that during this time he was falsely designated as a "business consultant." Thereafter, defendants Presser (now Estate of Presser or "Estate") and Harold Friedman ("H. Friedman"),[1] together with unknown federal agents, allegedly formulated a plan to entrap A. Friedman in a "ghost employee" scheme so as to secure his prosecution and conviction for embezzlement of Local 507's funds. In 1981, Local 507 was investigated by the Department of Labor ("DOL") and the Department of Justice ("DOJ"). Pursuant thereto, and allegedly as a result of his false designation as a business agent, A. Friedman was convicted and sentenced to four concurrent three year terms for embezzling union funds.

While in prison, A. Friedman learned from media publicity that Presser may have been an FBI informant and that U.S. agents had withheld exculpatory evidence at his trial. As a result of plaintiff's motion for a new trial and not wishing to divulge information provided by infor-

---

1. Until his death in 1988, Presser had served as President of the Teamsters International and Secretary–Treasurer of Local 507. As explained below, Presser had also been an FBI informant. Until his 1989 RICO conviction, H. Friedman served as President of Local 507.

mants, on August 26, 1985, the government moved to dismiss the indictment against A. Friedman, which was subsequently granted with prejudice.

On September 15, 1986, attorneys for Presser filed a pretrial discovery motion in *United States v. Presser*, No. CR–86–114–1 (N.D.Ohio), seeking DOJ documents pertaining to the decision of the government not to turn over exculpatory information to A. Friedman and his attorney at his original criminal trial. Plaintiffs-appellants allege that this was the first time they were able to actually ascertain the plausible existence of a relationship between Presser and the government.

Thereafter, on September 1, 1987, A. Friedman and Nancy Logue ("Logue"), his ex-wife who claims to have suffered emotional distress from A. Friedman's incarceration, brought a *Bivens* action in district court in Ohio against Presser (now the Estate), H. Friedman, and Local 507. The complaint alleged that defendants violated A. Friedman's due process rights and included pendent state claims for negligence, false arrest and imprisonment, malicious prosecution, loss of consortium and emotional distress. On September 22, 1987, plaintiffs-appellants moved for a stay of all proceedings in this action because of the pending criminal case of *United States v. Presser*, which involved not only Presser but H. Friedman as well. Although opposed to it, H. Friedman joined in the motion for a stay and at that time put plaintiffs on notice that service of process was defective. The district court granted the stay on November 2, 1987, and subsequently lifted it on March 8, 1989.

In April and May of 1989, each of the three defendants filed a motion to dismiss the complaint for failure to state a claim for relief based on the inapplicability of a *Bivens* action as against private citizens;

the running of the applicable statute of limitations on plaintiffs' *Bivens* claim; and insufficient service of process. On July 28, 1989, the district court upheld the service of process on defendants, but granted defendants' motion to dismiss, finding that plaintiffs failed to plead any facts of fraudulent concealment from which to find the limitations period tolled. On August 28, 1990, without first pursuing any other procedural steps under Rules 59 or 60, plaintiffs moved to amend their complaint to allege facts of fraudulent concealment. The district court denied the motion, setting forth no reasons for doing so. This timely appeal followed.

## II.

Initially we consider the threshold issue of whether the district court correctly held, as a matter of law, that there was sufficient service of process. In comparing the record with H. Friedman's cross-appeal, the particular facts regarding the manner in which plaintiffs served defendants are not in dispute.

Plaintiffs first attempted to serve defendants on September 2 and 3, 1987, pursuant to Rule 4(c)(2)(C)(ii).[2] At that time, plaintiffs sent to defendants, by certified mail, a summons and complaint with the required notice and acknowledgment form. Defendants, however, neither signed nor returned the acknowledgment form to plaintiffs.

On October 16, 1987, defendant H. Friedman, in his response to plaintiffs' motion for a stay, placed plaintiffs on notice that service of process was defective:

> Harold Friedman denies that he has been duly served with a copy of the plaintiff's summons and complaint, either on September 2 or September 3, 1987 or to date.

Again on April 24, 1989, H. Friedman reiterated his allegation of insufficient service

---

**2.** Rule 4(c)(2)(C)(ii) states in pertinent part:

(C) A summons and complaint may be served upon a defendant ...

(ii) by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to form 18–A

and a return envelope, postage prepaid, addressed to the sender. If no acknowledgment of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made [by personal service under Rule 4(d)(1) or 4(d)(3) ] ....

of process and requested that the district court issue an order "pursuant to Rules 12(b)(5) and 4(j) of the Federal Rules of Civil Procedure, vacating the plaintiff's purported service of summons and complaint on said defendant on the grounds that it was in violation of Rule 4(c)(2)(C)(ii)." Likewise, the other two defendants, the Estate and Local 507, moved the court on May 1, 1989 to dismiss the complaint for insufficient service of process.

On April 27 and 28, 1989, over 600 days after the original complaint was filed, plaintiffs properly served defendants by *personal* service. Under Rule 4(j), which the Estate relies on in arguing that there was insufficient service of process, a plaintiff is required to serve the defendant(s) within 120 days from the filing of the complaint or the court must dismiss the action, unless the plaintiff demonstrates good cause.[3] One of plaintiffs' arguments below[4] was that defendants were fully aware of their complaint by way of the mailed service effected in early September of 1987, and as evidenced by the pleading subsequently filed by H. Friedman in October of 1987. Therefore, plaintiffs contended defendants were properly served back in September of 1987, well within the 120–day period required by Rule 4(j).

■ The district court agreed with plaintiffs' argument and stated that "although plaintiff's original service was technically defective, all defendants had actual knowledge of this action and have not been prejudiced by the delay in service." For the great majority of courts, however, actual knowledge of the law suit does not substitute for proper service of process under

Rule 4(c)(2)(C)(ii). *See, e.g., United States v. Gluklick*, 801 F.2d 834, 836 (6th Cir. 1986) ("The courts, consistent with the legislative history, have held that the defendant's failure to acknowledge service renders such service invalid. . . .") (citation omitted); *Geiger v. Allen*, 850 F.2d 330, 332 n. 3 (7th Cir.1988) ("The rule in this and other circuits is that service by mail is not complete until an acknowledgment is filed with the court."); *Worrell v. B.F. Goodrich, Co.*, 845 F.2d 840, 841 (9th Cir.1988) (virtually every court that has examined the rule has concluded that service fails unless defendant returns acknowledgment form); *Stranahan Gear Co., Inc. v. NL Indus., Inc.*, 800 F.2d 53, 57–58 (3rd Cir. 1986); *Armco, Inc. v. Penrod–Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1088–89 (4th Cir.1984).

In *Combs v. Nick Garin Trucking*, 825 F.2d 437 (D.C.Cir.1987), the plaintiffs attempted to serve the defendants by certified mail pursuant to Rule 4(c)(2)(C)(ii). Although the plaintiffs later received a return receipt, which indicated that the summons and complaint had been delivered, the defendants never returned the acknowledgment of service of those papers. Based on the language of the Rule and congressional intent, the D.C. Circuit agreed "with the Third and Fourth Circuits" that federal mail service is rendered completely ineffective without return of an acknowledgment of service. *Id.* at 444–48. The court in *Combs* pointed out that Congress, in enacting Rule 4(c)(2)(C)(ii), had rejected a mail service rule proposed by the Supreme Court which would not have required the return of an acknowledgment form. *Id.* at 446–47. *But see Morse v. Elmira Country Club*, 752 F.2d 35 (2d Cir.1984).[5]

---

**3.** Rule 4(j) states in pertinent part:
  If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

**4.** On appeal, plaintiffs refrain from defending the district court's ruling upholding the sufficiency of process. Nevertheless, since the issue

of ineffective service of process may be raised *sua sponte, see* Rule 4(j), *supra* note 3, and given the district court's conclusory disposition of this issue, we address plaintiffs' arguments made below to the extent they have merit.

**5.** In running against the majority rule, the Second Circuit in *Morse* reasoned that "strong factors of justice and equity push toward reading Rule 4(c) as providing effective mail service where, as here, the recipient actually received the mail service but refuses to acknowledge it properly." 752 F.2d at 40. Despite clear legisla-

As suggested by our prior decision in *Gluklick, supra,* we agree with the majority rule. Due to the integral relationship between service of process and due process requirements, we find that the district court erred in its determination that actual knowledge of the action cured a technically defective service of process. *See Omni Capital Int'l v. Rudolf Wolff & Co., LTD.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987) ("[B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum."); *Amen v. City of Dearborn,* 532 F.2d 554, 557 (6th Cir.1976) ("[D]ue process requires proper service of process in order to obtain in personam jurisdiction."); *Delta S.S. Lines, Inc. v. Albano,* 768 F.2d 728, 730 (5th Cir.1985) (A defendant's return and acknowledgment are an essential part of the procedure for establishing in personam jurisdiction). In short, the requirement of proper service of process "is not some mindless technicality." *Del Raine v. Carlson,* 826 F.2d 698, 704 (7th Cir.1987). We conclude that plaintiffs' attempted service of process under Rule 4(c)(2)(C)(ii) did not give the district court personal jurisdiction over defendants.

■ Moreover, Rule 4(c)(2)(C)(ii) requires "a defendant who refuses to return the acknowledgment form [to] be *personally* served—*within the 120–day period*—with copies of the summons and complaint." *Green v. Humphrey Elevator and Truck Co.,* 816 F.2d 877 at 882 (3rd Cir.1987) (emphasis added). *See also Gluklick,* 801 F.2d at 836; *Stranahan,* 800 F.2d at 56. As noted previously, personal service was completed over 600 days after the complaint was filed.

■ Plaintiffs, however, argued below that the district court's "stay of *all* proceedings" issued on November 2, 1987 and lifted on March 8, 1989 tolled the 120–day period because service of process is a "proceeding" and plaintiffs, therefore, were barred from serving defendants during the period of the stay. By excluding the days the proceedings were tolled, plaintiffs contended that their personal service of process under Rule 4(d) was completed within the 120–day period required by Rule 4(j).[6]

Without personal jurisdiction over an individual, however, a court lacks all jurisdiction to adjudicate that party's right, whether or not the court has valid subject matter jurisdiction. *Dragor Shipping Corp. v. Union Tank Car Co.,* 378 F.2d 241, 244 (9th Cir.1967) ("The fact that subject-matter jurisdiction exists does not excuse the lack of *in personam* jurisdiction."). In other words, given our prior conclusion that plaintiffs did not effect proper mail service the district court's subsequent stay was nullified, as the court had not yet acquired in personam jurisdiction over any defendant. *See Kulko v. Superior Court,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978) ("[I]t has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant."); *Duplantier v. United States,* 606 F.2d 654, 663 n. 19 (5th Cir. 1979) (federal courts must have both subject matter and *in personam* jurisdiction before they may act); *Naum v. Brown,* 604 F.Supp. 1186, 1188 (E.D.N.Y.1985) ("[W]ithout personal jurisdiction over the defendants, any judgment *or ruling* is without force or effect....") (emphasis added). The district court was as powerless to issue

---

tive intent to the contrary, that court found that "Congress would have no ground" for wanting an unacknowledged mailing to be deemed ineffective service where it is clear that the summons and complaint had been delivered to the appropriate parties. *Id.*

**6.** According to plaintiffs, the time period for service of process should be calculated as follows:

1. 9–01–87 (complaint filed) to 11–02–87 (action stayed): 66 days.
2. 03–08–89 (stay lifted).
3. 04–27–89 (Estate of Presser served): 51 days after stay lifted.
4. 04–28–89 (Local 507 & H. Friedman served): 52 days after stay lifted.
5. 04–30–89 (last day for possible service if days during stay excluded): 120 days total.

orders affecting defendants [7] as it was powerless to issue orders affecting any other non-party. Accordingly, the stay did not toll the 120–day period for service of process.[8] We therefore find that plaintiffs did not effect personal service of process under Rule 4(d) within the required 120–day period.

■ Absent a showing of good cause as to why Rule 4(c)(2)(C)(ii)'s 120–day period was not complied with, the language of Rule 4(j) mandates dismissal. *Gluklick,* 801 F.2d at 837. Whether plaintiffs have established good cause is "a discretionary determination entrusted to the district court, and we are reluctant to substitute our own judgment for that court's." *Del Raine,* 826 F.2d at 705. *See also Lovelace v. Acme Markets, Inc.,* 820 F.2d 81, 83 (3rd Cir.1987); *Edwards v. Edwards,* 754 F.2d 298, 299 (8th Cir.1985).

As a final argument in support of the validity of their service of process, plaintiffs contended and the district court agreed that reliance on the stay of all proceedings constitutes "good cause" for plaintiffs' failure to perfect service within 120 days. While this is a close issue, we nevertheless find that the district court did not properly exercise its discretion in upholding the service of process on defendants. Based on the language of Rule 4(j), *supra* note 3, plaintiffs bear the burden of showing good cause. *See Norlock v. City of Garland,* 768 F.2d 654, 656 (5th Cir. 1985) ("[o]nce the validity of process has been contested, the plaintiff 'must bear the burden of establishing its validity.'"). We do not believe that plaintiffs have met their burden in this regard.

Legislative history provides only one example where an extension for good cause is appropriate—when the defendant intentionally evades service of process. 128 Cong. Rec. H9849, 9852 n. 25 (daily ed. Dec. 15, 1982), *reprinted in* 1982 U.S.Code Cong. & Admin.News 4434, 4446 n. 25. Courts that have considered this issue, however, agree that counsel's inadvertent failure or half-hearted efforts to serve a defendant within the statutory period does not constitute good cause. *E.g., Lovelace,* 820 F.2d at 84; *Hart v. United States,* 817 F.2d 78, 81 (9th Cir.1987) (secretarial negligence in serving defendant is chargeable to counsel); *Braxton v. United States,* 817 F.2d 238, 240 (3rd Cir.1987); *Geiger,* 850 F.2d at 333 (plaintiff may not rely on another's delay in supplying needed information, but is obligated to pursue alternative methods in finding and serving defendant).

Considering the totality of the circumstances, plaintiffs' efforts to properly serve defendants were half-hearted at best. Even if we assume plaintiffs held a good faith belief that the stay would prevent them from perfecting service, plaintiffs at the very least should have known (given the strong legal precedent) that they would not effect proper mail service on defendants unless the acknowledgment forms were returned. Accordingly, when plaintiffs initially decided to move for a stay several weeks after filing their complaint, all they had to do was wait a few days at most to make sure that they had properly served defendants.[9] *Cf. Excalibur Oil, Inc. v. Gable,* 105 F.R.D. 543, 545 (N.D.Ill. 1985) ("[S]ervice by mail, though a convenient measure to try when a case is first

---

**7.** We acknowledge that H. Friedman made an appearance, through his attorneys, when he filed a response to plaintiffs' motion to stay all proceedings. However, as his *first* pleading specifically contested the insufficiency of service of process, it cannot be plausibly contended that he waived Rule 4's requirements and thereby submitted to the district court's jurisdiction. *See, e.g., Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697, 701 (6th Cir.1978); *Jackson v. Hayakawa,* 682 F.2d 1344, 1347 (9th Cir.1982); *Martin v. New York Dept. of Mental Hygiene,* 588 F.2d 371, 373 (2d Cir.1978).

**8.** *Cf. Geiger,* 850 F.2d at 332–33 ("Of course, the 120–day period was tolled between the time that the action was dismissed and the date that the court reinstated the action, *since no action was pending during that interval.*") (emphasis added).

**9.** Plaintiffs served defendants by mail on September 2 and 3, 1987. Rule 4(c)(2)(C)(ii) requires that the acknowledgment form be sent back to the sender within 20 days. Plaintiffs' motion for a stay was filed on September 22, 1987.

filed, gives no assurance at all of obtaining effective jurisdiction over the defendant.").

Alternatively, they could have requested an exemption from the stay as to service of process. Despite direct notice by H. Friedman on October 16, 1989 that service of process was defective, plaintiffs never bothered to ask for a clarification on the scope of the stay. Plaintiffs had two and a half weeks after H. Friedman's notice and before the effective date of the stay in which to perfect service or move for a Rule 6(b) extension of the 120–day period, but they failed to do anything at that time.

After the stay was granted, plaintiffs could have moved the district court for a partial lifting of the stay to permit them to serve defendants, or to at least pursue one of the previously mentioned options.[10] Instead, plaintiffs did nothing until three days before what they claim was the 120–day period deadline—a date approximately 600 days after the complaint was filed. Even at that time, they may not have acted were it not for H. Friedman's motion to dismiss. That motion was filed a few days prior to plaintiffs' personal service of process on defendants on April 27 and 28, 1989, which again alerted plaintiffs that the mail service was defective.

In sum, while we recognize the lack of specific authority on the effect of a stay with regard to service of process requirements, there is enough authority on both the need for a court to have *in personam* jurisdiction before a court may act and the need to timely perfect mail service that is unacknowledged by the defendant(s) to hold plaintiffs, who are represented by counsel, accountable for their "assumption" that reliance on the stay would constitute good cause. Plaintiffs had more than ample time to determine whether their reliance on the stay was misplaced. *Cf. Lovelace*, 820 F.2d at 84–85 (plaintiff cannot rely on misrepresentation of specially appointed process server that process had been served on defendant). Under the mandatory language of Rule 4(c), we do

not believe that plaintiffs took enough precautionary measures to make sure their service of process was effective. *Cf. Whale v. United States*, 792 F.2d 951, 953 (9th Cir.1986) (plaintiff's service by mail on U.S. Attorney General within 120 days, when Rule 4(d)(4) permits personal service only, does not constitute good cause). Accordingly, we reverse the district court's determination that there was good cause for plaintiffs' failure to perfect service of process.

■ Absent good cause and proper service upon defendants, Rule 4(j) forces us to dismiss plaintiffs' complaint without prejudice. *Braxton*, 817 F.2d at 240. We realize that a dismissal without prejudice in this case may render plaintiffs' *Bivens* action subsequently time-barred. Despite the severity of such a result, dismissal is nevertheless warranted. *See Green*, 816 F.2d at 879 & n. 6; *Redding v. Essex Crane Rental Corp. of Alabama*, 752 F.2d 1077 (5th Cir.1985) (affirming dismissal despite fact statute of limitations had run); *Deloss v. Kenner General Contractors, Inc.*, 764 F.2d 707, 711 n. 5 (9th Cir.1985) ("Congress recognized the possibility that dismissal after the expiration of a statute of limitations could bar a plaintiff from bringing an action.") (citation omitted). *But see Morse*, 752 F.2d at 40 n. 9. In fact, in order to make sure the court is not burdened with further appeals on this case we will also address defendants' statute of limitations argument.

### III.

Plaintiffs vigorously contest the district court's ruling that their *Bivens* action is barred by the applicable statute of limitations. Initially, we agree with the district court that the relevant Ohio statute of limitations for *Bivens* actions was changed from one year to two years as a result of *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), and that the change should be applied retroactively in

---

**10.** Plaintiffs filed a motion, which was granted on September 28, 1988, to substitute one of the defendants who had died, thereby demonstrat-

ing that they knew the court would allow some proceedings in spite of the stay.

this case based on *Browning v. Pendleton*, 869 F.2d 989 (6th Cir.1989).

Ohio's two year statute of limitations, Ohio Rev.Code Ann. § 2305.10, began to run when A. Friedman knew or should have known of the injury which is the basis of his *Bivens* claim. *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir.1984); *Keating v. Carey*, 706 F.2d 377, 382 (2d Cir.1983). This inquiry focuses on the harm incurred, rather than the plaintiff's knowledge of the underlying facts which gave rise to the harm. *Shannon v. Recording Indus. Ass'n of Am.*, 661 F.Supp. 205, 210 (S.D.Ohio 1987). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier*, 742 F.2d at 273 (citing *Briley v. California*, 564 F.2d 849, 855 (9th Cir.1977)).

A. Friedman complains of a general deprivation of due process. Giving him every conceivable favorable inference, we agree with the district court that A. Friedman knew or should have known of his injury no later than August 26, 1985. A. Friedman admits that in June of 1985, while he was incarcerated, he learned from generalized newspaper accounts of a possible relationship existing between Jackie Presser and the federal government. Based on that information, A. Friedman subsequently moved for a new trial. As a consequence of A. Friedman's motion, on August 26, 1985 the government moved to dismiss A. Friedman's indictment, thereby allegedly confirming his suspicions that exculpatory evidence relating to government informants had been withheld at his trial. We find that given the aforementioned sequence of events, A. Friedman knew or should have known at that time that his alleged entrapment and denial of due process were the result of actions taken by defendants under color of federal law. We thus conclude that the relevant statute of limitations began to run on August 26, 1985.

Plaintiffs had two full years from August 26, 1985 to determine the purported facts underlying their *Bivens* claim, and file their complaint. Instead, they waited until September 1, 1987, at which time the statute of limitations had already run. Plaintiffs' argument that the running of the statutory period was tolled because of fraudulent concealment is not well taken. To establish fraudulent concealment, a plaintiff must plead three elements: "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Electric Power Bd. of Chattanooga v. Monsanto Co.*, 879 F.2d 1368, 1377 (6th Cir.1989) (citations omitted). *See also Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir.1974). Although plaintiffs' complaint and amended complaint are deficient in all three respects, it is sufficient to observe that plaintiffs have failed to plead their own due diligence with the requisite particularity demanded by Rule 9(b).[11] *Cf. Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir.1975).

Plaintiffs have the burden of proving the elements of fraudulent concealment, and therefore their own diligence in discovering the operative facts of their cause of action. *See Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230, 233, 234 n. 5 (6th Cir.1974). Plaintiffs allege that the first time they were able to actually ascertain the plausible existence of a relationship between Presser and the government was on September 15, 1986, when attorneys for Presser filed a pretrial discovery motion in *United States v. Presser.* That motion sought DOJ documents pertaining to the decision of the government not to turn over exculpatory information to A. Friedman and his attorney at his original criminal trial.

If plaintiffs were right, their cause of action would have been timely filed. However, A. Friedman himself acknowledged that in July of 1985 while he "was incarcerated that he had read generalized newspa-

---

**11.** Rule 9(b) states in part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

per accounts of a possible relationship existing between Jackie Presser and the Federal Government." Our circuit has set forth a test as to whether there is fraudulent concealment or simply a lack of diligence on the part of a plaintiff in discovering the operative facts of his cause of action. In following the Supreme Court case of *Wood v. Carpenter*, 101 U.S. 135, 25 L.Ed. 807 (1879), we stated in *Dayco Corp.*: "Any fact that should excite [the plaintiff's] suspicion is the same as actual knowledge of his entire claim." *Dayco Corp.*, 523 F.2d at 394. A. Friedman's suspicions that Presser was a government informant arose in July of 1985 and were subsequently confirmed on August 26, 1985, when the government dismissed his indictment.

The knowledge A. Friedman possessed on August 26, 1985 with regard to his injury would have apprised a diligent plaintiff of his cause of action within the limitations period. As the district court recognized, "[t]here is no indication that Friedman did anything to investigate his claim between August 26, 1985, and September 15, 1986." *Cf. Campbell v. Upjohn Co.*, 676 F.2d 1122, 1126 (6th Cir.1982) ("The plaintiff's ignorance of his cause of action does not by itself satisfy the requirements of due diligence and will not toll the statute of limitations."). Plaintiffs do not convince us that they have satisfied their "positive duty to use diligence in discovering [their] cause of action within the limitations period." *Dayco Corp.*, 523 F.2d at 394.

Moreover, based on the record, the knowledge A. Friedman allegedly gained on September 15, 1986 as to the nature of his claims was no different than that which he already had on August 26, 1985. *See Wood*, 101 U.S. at 143 ("The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence."); *Pinney Dock and Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1465 (6th Cir.1988) (There must be "distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly

see whether, by ordinary diligence, the discovery might not have been before made.") (citing *Wood*, 101 U.S. at 139–40). As plaintiffs have failed to plead additional facts from which to find the limitations period was tolled due to defendants' alleged fraudulent concealment, the conclusion that their *Bivens* claim is time-barred remains.

The substance of plaintiffs' amended complaint does not alter our finding that the statute of limitations was not tolled. The factual allegations contained therein and pertaining to the alleged fraudulent concealment are not pleaded with particularity; nor do they add to the factual allegations contained in the original complaint. As we dismiss plaintiffs' complaint because it is time-barred, we need not address plaintiffs' argument that the district court erred in denying their motion to amend their complaint. Finally, as no significant proceedings have taken place, the district court's dismissal, without prejudice, of plaintiffs' remaining state law claims was an appropriate exercise of its pendent jurisdiction.

IV.

We AFFIRM the dismissal of plaintiffs' complaint.

