9 F.3d 107
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sandra E. DAVIS, Plaintiff-Appellant,
v.
Nicholas F. BRADY, Secretary of the United States Department
of the Treasury; United States Equal Employment
Opportunity Commission, Defendants-Appellees.
 No. 92-6300.
 United States Court of Appeals, Sixth Circuit.
 Oct. 22, 1993.
 
 Before: KEITH, NELSON and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from an order dismissing the plaintiff's lawsuit for failure to complete service of process within the period mandated by the Federal Rules of Civil Procedure. Finding no abuse of discretion, we shall affirm the dismissal.
 
 
 2
 * The plaintiff, Sandra Davis, is an employee of the United States Treasury Department's Bureau of Alcohol, Tobacco and Firearms. On October 8, 1986, she complained to the Bureau that she had been sexually harassed in the course of her employment. The Equal Employment Opportunity Commission held a hearing on the complaint in May of 1988. The hearing resulted in Ms. Davis being awarded the position of special agent, with back pay and retroactive seniority. Her claims for attorney fees and interest on the back pay were denied, however.
 
 
 3
 On August 16, 1991, Ms. Davis filed a complaint in the United States District Court for the Western District of Tennessee. The complaint, which named the Secretary of the Treasury and the EEOC as defendants, sought an award of attorney fees and interest pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e et seq. On December 23, 1991, the defendants moved to dismiss the suit on the ground that they had not been served with process.
 
 
 4
 Ms. Davis subsequently filed a motion for enlargement of the time for service or, alternatively, for tolling of the statute of limitations on her action. The district court did not grant either branch of this motion, granting the government's motion to dismiss instead. This appeal followed.
 
 II
 
 5
 The circumstances that led to the failure to make service were these. Ms. Davis retained attorney Prather Randle to prosecute her suit in the district court. Mr. Randle, in turn, engaged a paralegal named Janice McNaeil to assist him in Ms. Davis' case and several other matters. Ms. McNaeil, who was newly certified as a paralegal, operated a free-lance paralegal service.
 
 
 6
 On August 16, 1991, Mr. Randle instructed Ms. McNaeil to file the complaint he had drafted for the Davis lawsuit and to serve the U.S. Attorney for the Western District of Tennessee. It appears that Mr. Randle also instructed Ms. McNaeil to serve the Attorney General of the United States by certified mail. According to affidavits subsequently executed by Mr. Randle and Ms. McNaeil, she did not understand that the U.S. Attorney and the Attorney General were two different people.
 
 
 7
 Ms. McNaeil left a copy of the complaint and summons at the office of the U.S. Attorney after having been told by a staff member that they would be properly delivered.[1] It is undisputed that Ms. McNaeil did not serve the Attorney General by registered or certified mail.
 
 
 8
 In July of 1991 Mr. Randle had instructed Ms. McNaeil to file a complaint in Watson v. Brady, C.A. No. 91-2574-GA, an employment discrimination case that likewise involved a federal agency as defendant. Ms. McNaeil failed to serve the Attorney General by mail in Watson as well, and she allegedly failed to serve the U.S. Attorney's office in proper fashion.
 
 
 9
 On December 11, 1991--three days before the expiration of the 120-day period available under Rule 4, Fed.R.Civ.P., for completion of service in the Davis case--the district court held a pretrial conference in Watson. At that conference the government objected to the manner in which Ms. McNaeil had attempted to effect service on the U.S. Attorney. Notwithstanding this development, Mr. Randle made no attempt to complete service in Davis by December 14. It was not until January 18, 1992--after the government had filed its motion to dismiss--that service was made on the U.S. Attorney in the manner allegedly required by law. The Attorney General was not served until February 18, 1992.
 
 III
 
 10
 * Rule 4(d)(5), Fed.R.Civ.P., provides that in a suit against an officer or agency of the United States, service of process must be accomplished by "serving the United States and by sending a copy of the summons and of the complaint by registered or certified mail to such officer or agency." Service is made on the United States as follows:
 
 
 11
 "by delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant United States attorney or clerical employee designated by the United States attorney in a writing filed with the clerk of court and by sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States...." Rule 4(d)(4), Fed.R.Civ.P.
 
 
 12
 The defendants in the case at bar, as we have seen, were the Secretary of the Treasury and the EEOC. Proper service would have included personal service on the U.S. Attorney for the Western District of Tennessee and service by registered or certified mail on the Attorney General, as well as the Secretary of the Treasury and the EEOC.
 
 
 13
 Rule 4(j) provides that if service is not completed within 120 days,
 
 
 14
 "and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion." (Emphasis added.)
 
 
 15
 Resolution of the question whether a plaintiff has established cause sufficient to avert an otherwise mandatory dismissal under Rule 4(j) is a matter within the discretion of the district court. We review the district court's determination under an abuse-of-discretion standard. Friedman v. Estate of Presser, 929 F.2d 1151, 1157 (6th Cir.1991).
 
 
 16
 The mandate of Rule 4(j) is not to be treated as a "mindless technicality." Del Raine v. Carlson, 826 F.2d 698, 704 (7th Cir.1987). Actual notice to the defendant and lack of prejudice cannot supply the good cause necessary to forestall dismissal where the 120-day period has been exceeded. Moncrief v. Stone, 961 F.2d 595, 596-97 (6th Cir.1992); Friedman, 929 F.2d at 1155-56.
 
 
 17
 The legislative history of the rule and the case law of this circuit seem to suggest that good cause can be shown only where the defendant has intentionally evaded service. Friedman, 929 F.2d at 1157; United States v. Gluklick, 801 F.2d 834, 835-37 (6th Cir.1986), cert. denied, 480 U.S. 919 (1987); 128 CONG.REC. H30,929, 30,933 n. 20 (1982). Be that as it may, it is clear that a plaintiff cannot establish good cause by showing mere inadvertence on the part of counsel. Moncrief, 961 F.2d at 597; Friedman, 929 F.2d at 1157. And just as a lawyer's inadvertence cannot constitute good cause, neither can inadvertence on the part of the lawyer's clerical staff; the omissions of the agent are chargeable to the principal. Hart v. United States, 817 F.2d 78, 81 (9th Cir.1987) (cited with approval in Friedman, 929 F.2d at 1157).
 
 B
 
 18
 Mr. Randle says that Ms. McNaeil did not understand the difference between the U.S. Attorney and the Attorney General, and she continually assured him that the Attorney General had been served. Randle admits, however, that he did not ask her for a return receipt that would have demonstrated proper mail service on the Attorney General. The lawyer was responsible for telling the paralegal what he wanted done and making sure she did it. If the ball was dropped between them, the effect is the same as if the lawyer alone had dropped the ball.
 
 
 19
 Mr. Randle argues further that the U.S. Attorney misled him into thinking that the Attorney General had been served. At the December 11 hearing in the Watson case, where counsel for the government informed Randle that the U.S. Attorney had not been properly served, no mention was made of the Attorney General. Mr. Randle sees this as a form of deception, suggesting that the U.S. Attorney purposefully concealed the lack of service on the Attorney General. The record, however, gives no indication that the U.S. Attorney knew that the Attorney General had not been served. The government did not willfully evade service, moreover, and it did not tell Mr. Randle that service had been completed. On the contrary, the government clearly put Mr. Randle on notice of a potential problem with respect to one element of service. Mr. Randle would have been well advised to double check the remaining elements before the 120 days had run, but he does not appear to have done so.
 
 
 20
 Ms. Davis relies heavily on Jordan v. United States, 694 F.2d 833 (D.C.Cir.1982), where equitable relief was granted after process had been served on the Attorney General by mistake rather than on the U.S. Attorney. There are at least three reasons why Jordan is not persuasive here, however. First, the erroneous service in Jordan was made by a U.S. Marshal and not by the attorney's own agent. Second, the Jordan court found that the plaintiff's attorney had "in fact ... done everything expected of him in attempting to effect proper service on the United States." Id. at 836. That is obviously not the case here. Third, there was no Rule 4(j) at the time Jordan was decided. There was thus no firm time limit for making service and no presumption in favor of dismissal for failure to adhere to the limit. See Moncrief, 961 F.2d at 598 (distinguishing Jordan ).
 
 IV
 
 21
 When this suit was filed in August of 1991, Title VII claimants who were federal employees had 30 days in which to bring suit after receipt of a right-to-sue letter from the EEOC. 42 U.S.C. Sec. 2000e-16(c)[2] Although Ms. Davis' suit was dismissed without prejudice under Rule 4(j), her action will be time-barred under Sec. 2000-16(c) unless the running of the statutory limitations period is tolled. Ms. Davis contends that even if the district court did not abuse its discretion in dismissing her suit under Rule 4(j), it should have granted her motion to toll the running of the statute.
 
 
 22
 The Supreme Court considered the question of equitable tolling of the Sec. 2000e-16(c) time limit in Irwin v. Veterans Administration, 498 U.S. 89 (1990). Although the time limits on Title VII suits against the government may be subject to equitable tolling in certain circumstances, Irwin declared, tolling is not appropriate where a court is faced with "a garden variety claim of excusable neglect." Id. at 96. Precisely such a claim was presented here; the district court did not err in declining the invitation to toll the running of the statutory period.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The government subsequently claimed that this was not good service on the U.S. Attorney. We need not decide the question here
 
 
 [2]
 A subsequent amendment of 42 U.S.C. Sec. 2000e-16(c) increased the period to 90 days