**Mary Ann DORTCH, Plaintiff–Appellee,**

v.

**FIRST FIDELITY MORTGAGE COMPANY OF MICHIGAN, INC., Omni America Mortgage Co., and Barry Greenberg, Defendants,**

**E. Adam CSOLKOVITS, Defendant–Appellant.**

No. 99–1920.

United States Court of Appeals, Sixth Circuit.

May 2, 2001.

Before DAUGHTREY and GILMAN, Circuit Judges, and COLLIER,* District Judge.

* The Hon. Curtis L. Collier, United States District Judge for the Eastern District of Tennes-

PER CURIAM.

The plaintiff, Mary Ann Dortch, filed suit against the two defendant companies, one a successor to the other, and against two company officers, both in their official and individual capacities, alleging violations of the federal Wage and Hour Act, 29 U.S.C. §§ 201 *et seq.* An attorney purporting to represent all four defendants filed an answer on their behalf but later withdrew from the case. The defendants were then ordered to appear with counsel or in person. Defendant Csolkovits did not do so for almost two years, however. In the meantime, the district court granted the plaintiff's motion for a default judgment against Csolkovits, which he now seeks to have set aside on appeal. Because there is no evidence in the record before us that Csolkovits was properly served, and because the district court may have been misled about the status of personal service on Csolkovits by counsel for the plaintiff, we vacate the default judgment and remand the case to the district court for reconsideration.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Mary Ann Dortch commenced the underlying lawsuit in April 1996, when she filed a complaint for relief under both federal and state wage and hour laws. Dortch's complaint named four defendants: First Fidelity Mortgage Company of Michigan, Inc.; Omni America Mortgage Co., the successor to First Fidelity; Barry Greenberg, the general manager of both companies; and E. Adam Csolkovits, the chairman and CEO of both companies. According to the complaint, Dortch worked for First Fidelity from August through November 1995, during which time Csolkovits and Greenberg offered to consider Dortch for a loan officer position if she

posted a $55,000 bond. Dortch claimed that Csolkovits told her that her money would be refunded if she was unable to post the full bond amount. Dortch maintains that she deposited a total of $16,000, which the defendants refused to repay when Dortch quit her job and requested the bond money back.

To serve the defendants with a copy of the complaint, Dortch sent a summons by certified mail to defendants' place of business at 30777 Northwestern Highway, Farmington Hills, Michigan. As Csolkovits points out, it appears from the return receipt that JoAnn Rovin Greenberg, the wife of co-defendant Greenberg, signed for the receipt of summons. On May 15, 1996, an answer was filed, purportedly on behalf of all defendants. Csolkovits claims, however, that "Defendant Greenberg apparently had his attorney of many years ... file an answer on behalf of all of the Defendants without consulting Defendant Csolkovits or even advising him of the fact that this lawsuit was in existence." Csolkovits explains that he was embroiled in "heated relationships" with both Greenbergs and that he eventually opposed JoAnn Greenberg in an unrelated lawsuit. Csolkovits also claims that the Greenbergs never advised him of the lawsuit and that he did not learn of it until three years later, at the time of the default judgment.

The record bears out this contention. Although it contains an affidavit that the plaintiff's deposition notice was served on the defendants' attorney on June 28, 1996, Csolkovits again claims that he was not notified, and apparently no defendant appeared for the deposition. According to the record, the next action in this case occurred on March 4, 1997, when the defendants' attorney moved to withdraw due to "an irreconcilable break down of the

see, sitting by designation.

attorney/client relationship." The record also includes a proof-of-service that the attorney's motion to withdraw was mailed to the defendants, but it does not reflect the addresses to which the motion was sent, and Csolkovits claims that he likewise did not receive this service. On June 9, 1997, the court granted the motion to withdraw, ordered the defendants to appear with counsel or *pro per*, and set a pre-trial conference. After the defendants failed to appear for the pre-trial conference, the court signed a document prepared by the plaintiff's attorney and captioned "order for entry of default." It was filed on August 15, 1997.

On January 5, 1998, Dortch filed a motion for default judgment in the amount of $22,775 against all defendants. Dortch also filed an affidavit of service of the motion for default judgment and a notice of hearing directed to Csolkovits at 30777 Northwestern Highway, the former address of defendant First Fidelity. Apparently, however, Dortch served the motion and notice to defendant Greenberg at his home. On January 30, 1998, the court sent a notice of the hearing on plaintiff's motion for default judgment to Csolkovits at 30777 Northwestern Highway, but it was returned to the court as "not deliverable as addressed, forwarding order expired." On March 19, 1998, the court sent a letter regarding motion practice to the Northwestern Highway address and this, too, was returned to the court as undeliverable. Finally, on July 15, 1998, the court sent an order resetting the hearing on plaintiff's motion for default judgment to Csolkovits at the Northwestern Highway address, and it was returned as "moved, left no address."

Meanwhile, Greenberg responded to plaintiff's motion for default judgment. On August 7, 1998, the court set aside the entry of default as to Greenberg, and denied Dortch's motion for default judgment against all defendants. On November 2, 1998, the case was reassigned to a different district judge, from whose order of default judgment Csolkovits brought this appeal. On May 3, 1999, Dortch again filed a motion for default judgment in the amount of $22,775.[1] An affidavit of service indicates that Dortch's motion for default judgment was sent to Csolkovits at 28000 Grand River Avenue. According to Csolkovits, 28000 Grand River Avenue is the address of both his residence at the Botsford Apartments and the Botsford Inn. Csolkovits claims that the motion was initially delivered to the Botsford Inn, and when he received it several days later, it was the first notice he had of the lawsuit.

---

1. This motion contains factual inaccuracies that are especially problematic given that a new judge had been assigned to the case and, as elaborated in the text, relied upon the statements of plaintiff's counsel during the hearing on the motion for default judgment. For example, the motion states that "on August 15, 1997 an Order for Default Judgment against all the defendants was entered in the amount of $22,775." What the court ordered, however, was an "entry of default" that is not expressed in complete sentences, does not indicate what is defaulted, and does not contain any reference to a monetary amount. Plaintiff later filed a motion for a default *judgment* in the amount of $22,775, on January 5, 1998.

Another error in plaintiff's motion is the statement that "defendants moved to set aside the Default Judgment based on the fact their attorneys withdrew from the case for the lack of defendants' cooperation and for nonpayment." Although the basis for moving to set aside the entry to default is unclear on the record before us, it is clear that only defendant Greenberg filed this motion to set aside. Plaintiff's motion for default judgment concludes that "defendants are engaging in tactics designed to unduly delay the judgment to which [she] is entitled." But, to the extent that these alleged dilatory tactics include Greenberg's motion to set aside the entry of default, Csolkovits cannot be held responsible.

Further, Csolkovits indicates that he promptly faxed the motion to his attorney, who filed a response on May 24, 1999, not knowing that a hearing had been scheduled for May 20, 1999. At that hearing, the court questioned plaintiff's attorney as follows:

The Court: Have they responded to the complaint? Has anybody filed an appearance?

Plaintiff's Counsel: No, your Honor.

The Court: Were they personally served?

Plaintiff's Counsel: Yes, your Honor.

The Court: They have never filed any appearance?

Plaintiff's Counsel: No, your Honor.

The Court: But they never did—they never filed an answer and never called you for an extension?

Plaintiff's Counsel: Correct.

After ascertaining that defendant did not have a representative in the courtroom, the court granted plaintiff's motion for default judgment. Plaintiff's counsel had not prepared a proposed judgment, however, and thus the order for default judgment was not signed by the district judge until June 1, 1999. It was entered on the docket on June 2.

Within the period allowed by the rules, Csolkovits moved for an extension of time to file his appeal of the default judgment. Granting the extension, the court stated:

In this case, a hearing on a default judgment was held on June 1, 1999. The motion for a default judgment was filed on May 3, 1999. Defendant's counsel entered an appearance in the case on May 24, 1999 and filed a written response to plaintiff's motion for default judgment. However, *neither the defendant nor his counsel appeared for the hearing on June 1, 1999.* Plaintiff represented that notice had been served, no response was received, and all other considerations were satisfied for entry of a default judgment, the Court granted the motion, in which an order was signed and entered on June 2, 1999. (Emphasis added.)

The court's impression that defendant had filed an appearance before the date of the hearing was incorrect, however. The court reporter verified that the hearing was held on May 20, 1999, not June 1, 1999, and that verification is included in the record. It appears that the district judge's error about the date of the hearing stemmed from an erroneous entry on the docket sheet. Thus, in ordering the default judgment, the district court was unaware, among other things, (1) that Csolkovits had apparently never been personally served with the complaint, despite the statement of plaintiff's counsel to the contrary; (2) that the defendant's May 24 appearance was actually entered after the May 20 hearing, not before; and (3) that counsel was unaware of the date of the hearing and thus could not be charged with deliberate failure to attend that hearing. On appeal, Csolkovits asks this court to set aside the default judgment.

## DISCUSSION

Based on the record before us, we conclude that the district court may have lacked personal jurisdiction over Csolkovits because he was not effectively served with process. Federal Rule of Civil Procedure 4(e) provides for service upon individuals as follows:

(1) pursuant to the law of the state in which the district court is located, or in which service is effected ...; or

(2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling ... or by

delivering a copy of the summons and of the complaint to an agent. . . .

The service on Csolkovits did not comply with any method set out in Rule 4(e)(2). Pursuant to Rule 4(e)(1), service could have been effectuated under Michigan Court Rule 2.105(A)(2) by "sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant acknowledges receipt of the mail. A copy of the return receipt signed by the defendant must be attached to proof showing service under subrule (A)(2)." Here, service was sent by certified mail, return receipt requested, to Csolkovits's business address. Delivery was not restricted to the addressee, nor did Csolkovits sign the receipt or otherwise acknowledge receipt of the service. Thus, it appears that Dortch did not effectively serve Csolkovits with process under state or federal procedure.

Dortch maintains that JoAnn Greenberg, who signed the return receipt, was authorized to do so on Csolkovits's behalf because she was the treasurer of the defendant companies. It is unclear, however, whether such service is effective to the extent that Csolkovits was sued in his individual capacity. Further, despite Dortch's arguments that Csolkovits must have had notice, and that the answer "cured" any defect in service, "[t]his court has indicated ... that it will not allow actual knowledge of a lawsuit to substitute for proper service under Fed.R.Civ.P. 4." *LSJ Investment Co., Inc. v. O.L.D., Inc.*, 167 F.3d 320, 322 (6th Cir.1999) (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1154 (6th Cir.1991)). Unless Michigan law authorized JoAnn Greenberg to accept service on behalf of Csolkovits in his individual capacity, service was not proper under federal or Michigan rules, and thus "the de-fault judgment entered against [Csolkovits] is void as a matter of law." *LSJ Investment Co.*, 167 F.3d at 324.

The district court was unable to address the question of personal jurisdiction because of unsubstantiated assurances by Dortch's counsel that personal service had been effected on Csolkovits. The record on appeal contains no evidence that Csolkovits ever received any of the papers from the plaintiff, her counsel, the lawyer who ostensibly represented all four defendants but later withdrew, or the court itself. The one document that Csolkovits admits to receiving is plaintiff's motion for default judgment, which is the only one that was sent to his home. Otherwise, it appears that everything else was sent to his former office and, moreover, that at least three documents sent to that address were returned. Thus, Csolkovits's failure to respond to the action filed against him may well have been the result not of culpable conduct but, instead, the result of mistake, inadvertence, surprise, or excusable neglect under Federal Rule of Civil Procedure 60(b)(1).

## CONCLUSION

For the reasons set out above, we conclude that the propriety of entering a default judgment should be reconsidered by the district court in light of facts that were not known to the court at the time the judgment was entered. We therefore VACATE the district court's judgment and REMAND the case for further consideration.