**In re Herman T. LOVE d/b/a Herman's Home Repair d/b/a Love Construction Company, Debtor.**

**Leonard Dreier, III et ux Tandy Dreier, Plaintiffs,**

**v.**

**Herman Love, Defendant.**

**Bankruptcy No. 98–32847.
Adversary No. 98–3107.**

United States Bankruptcy Court,
E.D. Tennessee.

March 24, 1999.

Glenna W. Overton, Donald E. Overton, Overton & Overton, Knoxville, Tennessee, for plaintiffs.

David Roberts, Jr., Bailey, Roberts & Bailey, P.L.L.C., Knoxville, Tennessee, for defendant.

## MEMORANDUM ON DEFENDANT'S MOTION TO DISMISS

RICHARD S. STAIR, Jr., Chief Judge.

The Plaintiffs, Leonard Dreier, III, and Tandy Dreier, commenced this adversary proceeding against the Debtor, Herman Love, on September 28, 1998, by the filing of a Complaint for Objection to Discharge (Complaint). The Plaintiffs filed an Amended and Substituted Complaint for Objection to Discharge (Amended Complaint) on October 7, 1998.[1] Before the court is a Motion to Dismiss Combined With Brief in Support of Motion (Motion) filed by the Debtor on February 25, 1999. By this Motion, the Debtor seeks to have the Plaintiffs' action dismissed for insufficiency of service of process.[2] The court will resolve the Debtor's Motion on the record before it which includes the transcript of proceedings held on January 28, 1999, and two affidavits: an Affidavit of Glenna W. Overton dated January 27, 1999, and filed the same date as Exhibit A

to a Brief in Support of Motion for Default Judgment Filed by Plaintiffs With Respect to Dischargeability of Herman T. Love, Debtor; and an Affidavit of Glenna W. Overton dated March 11, 1999, which was filed on March 15, 1999. All issues have been fully briefed by the parties.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(I) (West 1993).

### I

The facts are straightforward. On September 29, 1998, the day after the Plaintiffs filed their Complaint, the clerk's office issued a Summons which was delivered to the Plaintiffs' attorney, Glenna W. Overton. A certificate evidencing service of the Summons was not filed. On October 20, 1998, the clerk issued an Alias Summons. On October 22, 1998, Ms. Overton filed a Certificate of Service certifying that she served the Alias Summons and a copy of the "complaint" on the Debtor on October 21, 1998, by first-class mail, postage prepaid.[3] The October 20, 1998 Alias Summons and the Complaint and Amended Complaint were not served on the Debtor's attorney, N. David Roberts, Jr.[4]

---

1. Contrary to the title assigned this action by the Plaintiffs' counsel, the Plaintiffs do not object to the Debtor's discharge. Rather, they seek a determination that a $31,830.63 state court judgment entered against the Debtor in their favor is nondischargeable under 11 U.S.C.A. § 523(a)(2)(A) and/or (4) (West 1993).

2. In his Motion, the Debtor states that he seeks relief under FED.R.CIV.P. 12(b)(2), (4) and (5), which provides:
 > Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counter claim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (2) lack of jurisdiction over the person ... (4) insufficiency of process, [and] (5) insufficiency of service of process. ...

 Because the Debtor grounds his argument for dismissal exclusively on the Plaintiffs' alleged failure to properly serve him with process, the court will consider the Motion solely under Rule 12(b)(5).

3. The Certificate of Service was not signed by Ms. Overton. The court nonetheless deems this defect cured by an Amended Certificate of Service filed on January 29, 1999, which Ms. Overton did sign.

4. Federal R.Bankr.P. 7004(b)(9) mandates that when the debtor is served with process by mail such service is made by mailing a copy of the summons and complaint to the debtor "and, if the debtor is represented by an attorney, to the attorney at the attorney's post-office address." In her January 27, 1999 Affidavit, Ms. Overton states that she mailed a copy of the Complaint to the Debtor on September 29, 1998, and that she "also mailed a copy of the Complaint to Mr. Roberts," the Debtor's attorney. The record establishes that Ms. Overton mailed the Complaint to Mr. Roberts prior to the issuance of the September 29, 1998 Summons. Ms. Overton also states in both her Affidavits that she mailed the Amended Complaint to Mr. Roberts on October 6, 1998. The Amended Complaint was not filed by the Plaintiffs until October 7, 1998, and the Alias Summons was not issued until October 20, 1998, thirteen days later.

On December 7, 1998, the Plaintiffs filed a Motion for Default Judgment requesting that judgment be entered against the Debtor by default for failure to timely respond to the Amended Complaint. On December 23, 1998, the Debtor filed a Debtor's Special Appearance for the Limited Purpose of Responding to Plaintiff's [sic] Motion for Default Judgment Combined With Brief in Support Thereof (Response), requesting that the Motion for Default Judgment be denied because he had not been served with process in the manner required by FED.R.BANKR.P. 7004.[5] At a hearing on January 28, 1999, attended by the Debtor's attorney and Donald E. Overton, one of the Plaintiffs' attorneys, the court questioned Mr. Overton regarding the service of process. The following exchange took place:

THE COURT: Glenna Overton purportedly served Herman Love, but there's nothing certifying that Mr. Roberts was served with a summons and a copy of the complaint.

MR. OVERTON: I'm sorry. I'm very surprised about that. I thought we had taken care of that. We did read the rules and I thought the return of service was properly done. But, if it's not in the file . . .

. . . .

THE COURT: Well, if you served it, I'll give you an opportunity to certify service. But this says on October 21st service was made by mail, regular, first class United States mail, postage prepaid, addressed to Herman Love. That's fine.

But there's nothing here to say that Mr. Roberts was served with a summons and copy of the complaint.

MR. OVERTON: May we take that opportunity then and clean that up?

. . . .

THE COURT: Now, be very careful here, Mr. Overton. The rules speak very clearly as to what is to be served.

MR. OVERTON: Yes, Your Honor.

THE COURT: We're talking the summons and the complaint.

MR. OVERTON: Yes, Your Honor. We're not rookies at this; we have done this in other courts. So I don't know what happened. I have no explanation. We may have made an error, but we'll be happy to clear that up. But we are aware that has to happen. We're not ignorant. I mean, we realize that.

Tr. at 4 and 5.

Subsequent to the January 28, 1999 hearing, the Plaintiffs, on January 29, 1999, filed two additional Certificates of Service: (1) an Amended Certificate of Service signed by Glenna W. Overton on January 29, 1999, stating that on October 21, 1998, she served the Debtor with the Alias Summons issued on October 20, 1998, and with a copy of the "complaint" by first-class mail;[6] and (2) a Certificate of Service signed by Glenna W. Overton certifying service of an Alias Summons and a copy of the "complaint" on January 29, 1999, as follows:[7]

Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:

Tracy Henson at

David Roberts, Jr. Office

Suite 218

Court Square

Knoxville, TN 37902 [8]

5. In his Response, the Debtor limits his appearance specially to the issue of the sufficiency of the Plaintiffs' service of process.

6. *See supra* n. 3.

7. This Alias Summons was issued by the clerk on January 29, 1999, the same date it purports to have been served.

8. The Plaintiffs do not contend that the January 29, 1999 process was intended to or was effective to personally serve the Debtor. Rather, Ms. Overton states in her Affidavit filed on March 15, 1999, that she "served Mr. Roberts with a Summons and the Amended Complaint by delivering a copy of said [sic] to Mr. Roberts' law office on January 29, 1999." Furthermore, in the Plaintiffs' Response to

Also on January 29, 1999, the Plaintiffs filed a Motion to Withdraw Plaintiffs' Motion for Default Judgment requesting that they be allowed to withdraw the Motion for Default Judgment filed on December 7, 1998. That motion was granted and the Motion for Default Judgment was withdrawn pursuant to an Order entered on February 5, 1999.

## II

The Federal Rules of Civil Procedure direct that the "plaintiff is responsible for service of a summons and complaint within the time allowed under subdivision (m)...." FED.R.CIV.P. 4(c)(1), incorporated into FED.R.BANKR.P. 7004(a). The procedures for completing service upon a debtor who is the named defendant in an adversary proceeding are simple and may be complied with easily. During the pendency of the debtor's case, service of process upon the debtor may be made

> by mailing a copy of the summons and complaint to the debtor at the address shown in the petition or statement of affairs or to such other address as the debtor may designate in a filed writing and, if the debtor is represented by an attorney, to the attorney at the attorney's post-office address.

FED.R.BANKR.P. 7004(b)(9). Pursuant to FED.R.BANKR.P. 9006(e), "[s]ervice of process ... is complete on mailing."

Two time limitations apply for service of process in an adversary proceeding. First, FED.R.BANKR.P. 7004(e) directs in material part that

> If service is made by any authorized form of mail, the summons and complaint shall be deposited in the mail within 10 days following issuance of the

summons. If a summons is not timely delivered or mailed, another summons shall be issued and served.

Second, FED.R.CIV.P. (4)(m), incorporated into FED.R.BANKR.P. 7004(a), provides in material part:

> **Time Limit for Service.** If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

 Rule 7004(b)(9) unambiguously provides that service of process upon a debtor is not sufficient unless both the debtor and his attorney are served with the summons and a copy of the complaint. *See, e.g., Ingala v. Sciarretto (In re Sciarretto),* 170 B.R. 33, 35 (Bankr.D.Conn. 1994) ("[S]ervice [by mail] upon a debtor is not sufficient until both the debtor and his attorney are served with copies of the summons and complaint."); *United States Escrow v. Bloomingdale (In re Bloomingdale),* 137 B.R. 351, 354 (Bankr.C.D.Cal. 1991) (holding that service upon debtor is not proper until debtor's counsel is served); *Longmeadow Motor Co., Inc. v. Heinz (In re Heinz),* 131 B.R. 38, 40 (Bankr.D.Md.1991) (Attempted service on debtors "ineffectual because debtors' counsel was not served"). Anything short of strict compliance with Rule 7004(b)(9) is insufficient. *See Meganck v. Couts (In re Couts),* 188 B.R. 949, 953 (Bankr. E.D.Mich.1995) ("[A]ctual knowledge of a

Defendant's Motion to Dismiss filed on March 15, 1999, the Plaintiffs state that "[o]n January 29, 1999, Plaintiffs' counsel cured the defects in service by filing an Amended Certificate of Service and serving a Summons on the Debtor's counsel." The court is perplexed. Assuming service of the January 29, 1999 Alias process on "Tracy Henson" equates to service on Mr. Roberts, Ms. Overton's Certifi-

cate of Service certifies that she personally served the "defendant." Mr. Roberts is not a defendant in this adversary proceeding. Personal service on Mr. Roberts accomplishes nothing. The Plaintiffs elected to serve the Debtor by mail. They did not effectuate service in the manner required by Rule 7004(b)(9).

suit is not a substitute for proper service of process and does not cure a technically defective service of process.") (citing *Friedman v. Estate of Presser,* 929 F.2d 1151, 1155–56 (6th Cir.1991)).

Because the Plaintiffs did not serve the Debtor's attorney with the October 20, 1998 Alias Summons and a copy of the "complaint" as required by Rule 7004(b)(9), their attempted service upon the Debtor was ineffective. Thus, the Plaintiffs failed to timely serve the Debtor under Rule 4(m).

In the December 1, 1993 amendments to Rule 4, subsection (j) was amended and relabeled subsection (m).[9] In the Sixth Circuit, the language of former Rule 4(j)[10] mandated dismissal absent a showing of good cause. *See Habib v. General Motors Corp.,* 15 F.3d 72, 73 (6th Cir.1994) ("Absent a showing of good cause to justify a failure of timely service, FED.R.CIV.P. 4(j) compels dismissal.") (collecting cases). The "good cause" requirement of Rule 4(j) was addressed by District Judge Leon Jordan of this district in *DuVoisin v. Arrington (In re Southern Indus. Banking Corp.),* 205 B.R. 525 (E.D.Tenn.1996), *aff'd,* 112 F.3d 248 (6th Cir.1997). Judge Jordan stated:

> The "[l]egislative history [to Rule 4(j)[11]] provides only one example where an extension for good cause is appropriate—when the defendant intentionally evades service of process." Inadvertent failure or half-hearted efforts to serve process on a defendant within the time allowed do not constitute good cause. Diligence and reasonable efforts to serve

process may demonstrate good cause under the rule.

> ... A showing of good cause under the rule must relate to the reasons why service of process was not made in a timely manner, not to other reasons why a civil action or adversary proceeding should not be dismissed. "Good cause" does not mean merely that the defendant was not prejudiced by the late service of process.

*Id.* at 534 (quoting *Friedman,* 929 F.2d at 1157) (citations omitted).

Rule 4(m), however, has been construed more liberally by bankruptcy courts, especially where, as in the present matter, the plaintiff would be time-barred from filing a new action notwithstanding that the rule compels that the dismissal be "without prejudice." *See Henderson v. United States,* 517 U.S. 654, 663, 116 S.Ct. 1638, 1643, 134 L.Ed.2d 880 (1996) ("[C]ourts have been awarded discretion to enlarge the 120–day period 'even if there is no good cause shown.'") (dictum) (quoting the Advisory Committee Notes to Rule 4(m)); *Westfield Ins. Cos. v. Madar (In re Madar),* 218 B.R. 382 (Bankr.E.D.Mich.1998.); *Barr v. Barr (In re Barr),* 217 B.R. 626 (Bankr.W.D.Wash.1998); *Florida Outdoor Equip., Inc. v. Deresinski (In re Deresinski),* 214 B.R. 35 (Bankr.M.D.Fla.1997); *Smith v. Hamrah (In re Hamrah),* 174 B.R. 109 (Bankr.W.D.Mo.1994).[12]

In *Madar,* the court analyzed the differences between the former subsection (j) of Rule 4 and the current subsection (m):

> Under the rule as it formerly existed, the absence of good cause was fatal: The court's only choice was to dismiss

---

**9.** Rule 4(j) provided in material part:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

**10.** *See supra* n. 9.

**11.** *See supra* n. 9.

**12.** All of these cues deal with complaints seeking a determination of the dischargeability of certain debts under 11 U.S.C.A. § 523(c) (West 1993 & Supp.1999), which, pursuant to FED R.BANKR.P. 4007(c) "shall be filed not later than 60 days following the first date set for the meeting of creditors."

the case. Thus a case would have to be dismissed even though the plaintiff would be time-barred from filing a new action.

... The 1993 amendment is manna from heaven ... because, as explained by the Advisory Committee on Civil Rules,

> [t]he new subdivision ... authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown.... Relief may be justified, for example, *if the applicable statute of limitations would bar the refiled action,* or if the defendant is evading service or conceals a defect in attempted service.

Federal Civil Judicial Procedure & Rules at p. 52 (1997 ed. West) (quoting the Advisory Committee Notes relating to the 1993 amendments) (emphasis added). Thanks to this amendment, then, good cause need not be shown in order to avoid dismissal.

*Madar,* 218 B.R. at 383 (citations and footnote omitted).

The *Madar* court concludes that several courts, including the Sixth Circuit, have "overlooked" the 1993 change to Rule 4. *Id.* at 383 n. 1 (citing *Byrd v. Stone,* 94 F.3d 217, 219 (6th Cir.1996) ("Absent a showing of good cause.... [Rule 4(m)] compel[s] dismissal.") and *Miller v. Runyon,* 56 F.3d 64, 1995 WL 325692 at *1 (6th Cir.1995) (unpublished) ("Fed.R.Civ.P. 4(m), formerly 4(j), provides that an action ... shall be dismissed ... unless the plaintiff can show good cause why service was not made within the 120–day period.")). The court states that "[a]lthough the Sixth Circuit has thus far been asleep at the wheel on this point, it has not explicitly addressed it." *Id.* Therefore, concludes the court, it is "still free to chart its own course." *Id.* (citation omitted).

This court need not reconcile the distinctions between former subsection (j) and the current subsection (m) of Rule 4 in the present proceeding. Whether the analysis in *Madar* is correct or is contrary to con-

trolling Sixth Circuit authority is of no consequence because the Plaintiffs cannot prevail regardless of the construction afforded Rule 4(m).

As observed by the bankruptcy court in *Barr:*

> [T]he expiration of a bar date or statute of limitations is only one factor that should be considered, but the expiration of the bar date or statute of limitations by themselves does not require a court to grant an extension of time to file and serve a complaint. A contrary conclusion would undermine one of the underlying purposes of bankruptcy, which is to grant a debtor a fresh start as expeditiously as possible, and "would extend both the 120 days and the statute of limitations of every cause of action indefinitely."

*Barr,* 217 B.R. at 630 (quoting *Petrucelli v. Bohringer and Ratzinger,* 46 F.3d 1298, 1306 n. 7 (3d Cir.1995)); *see also Panaras v. Liquid Carbonic Indus. Corp.,* 94 F.3d 338, 341 (7th Cir.1996) ("The running of the statute of limitations does not require that a district court extend the time for service of process under [Rule 4(m)]. Rather, absent a finding of good cause, a district court may in its discretion still dismiss a case even after considering that the statute of limitations has run.") (citation omitted).

There is no evidence before the court of the Plaintiffs' diligence and reasonable efforts to serve the Debtor. The evidence is to the contrary. In his December 23, 1998 Response filed in opposition to the Plaintiffs' Motion for Default Judgment, the Debtor entered his appearance solely to attack the sufficiency of the Plaintiffs' service of process. In his Response, the Debtor specifically requested that the Motion for Default Judgment be denied because "[t]he plaintiffs have not complied with Fed.R.Bankr.P. 7004 regarding proper service of process upon the debtor." The Debtor also states in his Response that "[t]he return of service contained in

the Court's file shows on its face that proper compliance with [Rule] 7004 has not been accomplished." The Debtor clearly pointed out to the Plaintiffs, 34 days prior to the expiration of Rule 4(m)'s 120–day time limit, that the Plaintiffs' service of process returned on October 22, 1998, was defective.[13] The Plaintiffs, with ample time to do so, took no action to have another alias summons issued in order that they might timely effectuate service in the proper manner. The Plaintiffs showed no diligence in their efforts to serve the Debtor within the 120–day time period. Accordingly, good cause for failing to make service on the Debtor within the 120–day period prescribed by Rule 4(m) has not been shown.

■ The court will not use the discretion arguably afforded it under Rule 4(m) to allow an extension of the 120–day time period for obtaining service. Counsel for the Plaintiffs acknowledged his and his partners' familiarity with Rule 7004(b)(9) at the January 28, 1999 hearing on the Plaintiffs' Motion for Default Judgment. Furthermore, as has been discussed, the Debtor's counsel clearly pointed out the defective service in the Debtor's December 23, 1998 Response well in advance of the expiration of Rule 4(m)'s 120–day service period. Under these circumstances it would be inequitable for the court to enlarge the 120–day period. To do so would require the court to ignore the dilatory actions of the Plaintiffs, would unjustly reward the Plaintiffs, and would deprive Rule 4(m) of its vitality.

Finally, the Plaintiffs contend that they may rely on the excusable neglect standard of Fed.R.Bankr.P. 9006(b)(1) for enlargement of the 120–day service period mandated by Rule 4(m).[14] There is authority to support the Plaintiffs' argument. *See Kadlecek v. Ferguson (In re Ferguson)*, 204 B.R. 202 (Bankr.N.D.Ill.1997); *Artificial Intelligence Corp. v. Casey (In re Casey)*, 198 B.R. 918 (Bankr.S.D.Cal. 1996).

The Supreme Court attempted to clarify the various excusable neglect standards employed by the circuit courts of appeal in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In *Pioneer,* the Court structured a balancing test to analyze excusable neglect, stating that the courts should view all circumstances. Specifically, the Court offered the following instruction for deciding whether relief may be granted on the grounds of "excusable neglect";

Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay,

**13.** The initial Complaint was filed on September 28, 1998. The 120–day service period mandated by Rule 4(m) accordingly expired on January 26, 1999. The filing of the Amended Complaint on October 7, 1998, did not change the 120–day service period. *See Slone–Stiver v. Security Nat'l Bank and Trust Co. (In re Tower Metal Alloy Co.),* 193 B.R. 266, 272 (Bankr.S.D.Ohio 1996) (explaining that an amended complaint must be served within 120 days of the filing of the original complaint); *see also Leonard v. Stuart–James Co., Inc.,* 742 F.Supp. 653, 662 (N.D.Ga.1990) (same).

**14.** Rule 9006(b)(1) provides in material part:

[W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed.R.Bankr.P. 9006(b)(1).

including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Id.* at 395, 113 S.Ct. at 1498. Finally, the Court stated that "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer,* 507 U.S. at 396, 113 S.Ct. at 1499. That principle requires courts to "focus ... upon whether the neglect of [the movant] *and their counsel* was excusable." *Id.* at 397, 113 S.Ct. at 1499.

■ In the present case, the Plaintiffs do not argue ignorance of the rules regarding service of process. Rather, they acknowledge their familiarity with the rules. Even when the defect in service of process was pointed out to the Plaintiffs well in advance of the expiration of Rule 4(m)'s 120–day service period, they took no action. The court finds nothing in the facts before it to warrant a finding that any neglect on the part of the Plaintiffs is "excusable."

For the above reasons, the Debtor's Motion will be granted and the Plaintiffs' Complaint will be dismissed.