In re Stephen K. REAVES Debtor.

Stephen K. Reaves, Plaintiff,

v.

America's Servicing Company,
Defendant.

Bankruptcy No. 00–10435.
Adversary No. 07–5102.

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

Nov. 13, 2008.

Gerald W. Ketchum, Dyersburg, TN, for Plaintiff.

R. Spencer Clift, III, Baker, Donelson, Bearman Caldwell & Berk, Memphis, TN, for Defendant.

## MEMORANDUM OPINION AND ORDER RE: DEFENDANT'S "MOTION FOR ORDER GRANTING RELIEF FROM JUDGMENT OF CONTEMPT"

G. HARVEY BOSWELL, Bankruptcy Judge.

The Court conducted a hearing on the defendant's "Motion for Order Granting Relief from Judgment of Contempt" on September 10, 2008 and October 20, 2008. FED. R. BANKR.P. 9014. Resolution of this matter is a core proceeding. 28 U.S.C. § 157(b)(2). The Court has reviewed the testimony from the hearing and the record as a whole. This Memorandum Opinion and Order shall serve as the Court's findings of facts and conclusions of law. FED. R. BANKR.P. 7052.

### I. FINDINGS OF FACT

The debtor in this case, Stephen K. Reaves, ("debtor" or "Reaves"), filed his chapter 13 petition on February 3, 2000. Altegra Credit Company filed a proof of claim in the debtor's case on April 1, 2000.[1] This proof of claim showed a secured balance of $38,732.03 and an arrearage claim of $1650.71. In the addendum to the proof of claim attached to Hearing Exhibit 4, the secured claim balance included a principal balance of $33,539.16, interest of $4821.03 and $371.84 in late charges. The interest rate was listed as 11.75%.

The debtor's chapter 13 plan provided for (1) the ongoing payment of $426.29 to be paid through the plan beginning on April 1, 2000, and (2) the arrearage claim of $1650.71 to be paid through the plan at the rate of $37.00 per month with 10% interest.[2] The debtor's plan was confirmed on April 3, 2000. On December 17, 2003, America's Servicing Company, ("ASC"), was substituted for Altegra Credit Company as a creditor in Reaves' case.[3]

On June 18, 2004, the Chapter 13 Trustee filed a motion to require ASC to appear and show cause why its records did not reflect the trustee's records for the home mortgage. The Court entered an order on the motion on March 12, 2004, which directed ASC to adjust its records to match those of the trustee. A copy of this order was served on ASC at "ATTN BK Dept MAC# X7801–014, P.O. Box 981, Frederick, MD 21705–0981," ("981 address"). An Administrative Order Modifying Plan was entered on July 16, 2004, which ordered the ongoing mortgage payments to ASC to be changed to $563.17 per month. A copy of this order was served on ASC at the 981 address.

On March 24, 2005, the debtor filed a "Motion for Mortgage Holder to Change their Records to Reflect Payments Made Through the Chapter 13 Trustee." As of the date of the filing of the debtor's motion, the principle amount paid to ASC was $26,672.33 and the arrearage claim of $1650.71 had been paid in full through the plan. The requested payoff from ASC allegedly showed a balance due of $33,812.31. The Debtor's motion was

1. See Hearing Exhibit 4 and Hearing Collective Exhibit 2, item K.

2. See Hearing Collective Exhibit 2, item N.

3. See docket # 18.

served on ASC by first class mail at "7495 New Horizon Way, Frederick, MD 21703–9388."

The Court entered an order on the debtor's motion on May 10, 2005. The order required ASC to adjust the balance due to reflect the payments made through the chapter 13 plan and to show the arrearage as paid in full. The order was served on ASC by first class mail at the New Horizon Way address in Frederick.

The Chapter 13 Trustee filed the "Trustee's Final Accounting and Report & Motion to Close Case" on May 12, 2005. According to that motion, the trustee disbursed $27,798.78 to ASC on its priority claim during the pendency of the case. The trustee also disbursed $2084.33 to ASC on its arrearage claim during the case. Reaves' case was discharged and closed on May 13, 2005. The order discharging and closing the case was served on ASC by first class mail to the 981 address.

The debtor filed a motion to reopen the case on March 22, 2007, for the purpose of filing a complaint for contempt against ASC. A copy of the motion as well as the notice of hearing on the motion was served on ASC at the 981 address. The Court entered an order granting the debtor's motion on April 30, 2007. A copy of this order was served on ASC at the 981 address.

Reaves filed the instant adversary proceeding on May 3, 2007. In his "Complaint for Contempt," the debtor alleged that the defendant, ASC had been taking several weeks to process the debtor's home mortgage payments thereby causing the transaction to be late. The defendant

then charged late fees and penalties for this "late" payment. The debtor also alleged that ASC had failed to adjust its records to match those of the Chapter 13 Trustee and had been attempting to collect the incorrect balance from the debtor. According to the certificate of service filed by the debtor, Reaves' attorney served a copy of the complaint and the summons on the defendant by first class mail at "P.O. Box 981, Frederick, MO 21705–0981." [4]

Reaves' complaint was heard on September 6, 2007, at which time the court granted the debtor a judgment for contempt. ASC did not appear at the hearing nor did it file any response to the motion. At the hearing, the debtor represented to the Court that the defendant had been "duly served with process." Due to deficient filings, the order memorializing the court's judgment was not entered on the Court's docket until November 29, 2007.

Pursuant to the Judgment of Contempt, the Court found that ASC had failed to adjust its records to match those of the Chapter 13 Trustee and that ASC has "repeatedly attempted to collect its incorrect balance and has repeatedly contacted the Plaintiff demanding payment, despite efforts by the Plaintiff and Plaintiff's attorney's office to achieve a correction of the matter without further Court action." [5] The Court found that such actions amounted to willful contempt. As sanctions for this contempt, the Court ordered "that the Plaintiff's mortgage debt serviced or otherwise owned or represented by America's Servicing Company is hereby declared to be paid in full and discharged complete-

---

4. The address should have been listed as P.O. Box 981, Frederick, MD 21705–0981. Later filed certificates of service showed the "P.O. Box 981, Frederick, Maryland" address instead of Frederick, Missouri. The Court is

presuming that the "Frederick, MO" was a typographical error.

5. See "Judgment for Contempt," docket # 21.

ly."[6] The Court also awarded the debtor's attorney, Gerald Ketchum, $2,500.00 for his attorney's fees in prosecuting the matter. Lastly, the order directed the register of deeds for the appropriate county to "record a copy of this judgment, which shall act as a full release of the deed of trust representing the underlying mortgage debt and the accompanying lien upon the property of the Plaintiff."[7] According to the BNC Certificate of Mailing docketed on December 1, 2007, the judgment of contempt was served by first class mail on ASC at the 981 address.

The adversary proceeding was closed on December 10, 2007. The debtor filed a motion to reopen the adversary on December 13, 2007, so that he might file an amended order on the judgment of contempt to include a description of the property and the Deed of Trust. Notice of the January 10, 2008, hearing on this motion was served on ASC at the 981 address. The debtor filed an amended judgment of contempt on January 25, 2008. A copy of this amended judgment was served on ASC at the 981 address.

On April 16, 2008, ASC filed a motion to reopen the adversary proceeding so that it might "file a motion seeking an order granting relief from the Judgment for Contempt." According to this motion, ASC did not file a response to the debtor's complaint because the complaint was improperly served. The "P.O. Box 981, Frederick, MO" address listed on the certificate of service for the complaint and summons did not relate to any address used by ASC. The "P.O. Box 981, Frederick, MD" address listed on the certificate of service for the judgment and amended judgment is a "lock box" address used by ASC for the collection of payments. According to the motion, this lock box was maintained by and under the control of Regulas Group, LLC.

ASC also alleged that the pleadings and/or judgments in this matter were not served on ASC at its business address nor were they directed to the attention of any of ASC's officers, managing agents or general agents as required by Fed. R. Bankr.P. 7004(b)(3). ASC admitted that it had attempted to collect payments from the debtor post-discharge, but that it had only attempted to collect post-bankruptcy defaults. The Court conducted a hearing on ASC's motion to reopen on June 5, 2008, at which time it granted the motion. The order granting the motion was filed on September 2, 2008.

At the same time it filed its motion to reopen, ASC filed a "Motion and Memorandum in Support of America's Servicing Company's Motion for an Order Granting Relief from Judgment for Contempt." In this motion and memorandum, ASC set forth the same factual allegations as its motion to reopen: (1) The debtor did not properly serve ASC pursuant to Fed. R. Bankr.P. 7004(b)(3) and (2) ASC had only attempted to collect post-bankruptcy defaults on the mortgage. ASC argued that failure to properly serve the pleadings "renders a judgment obtained thereby void" as a violation of due process.

According to the affidavit of Cindy T. Shanabrook, an employee in the Default Operations Support unit of Wells Fargo Bank dba ASC, the principle place of business for ASC is 101 North Phillips Avenue, Sioux Falls, SD 57104. The customer inquiry address for ASC is 1 Home Campus, Des Moines, IA 50328–0001. Shanabrook's affidavit was introduced into evidence at the hearing on this matter as part of collective exhibit 2. According to this

6. Id.

7. Id.

affidavit, ASC did not learn of the adversary proceeding until December 10, 2007, when the debtor's attorney faxed copies of the pleadings in this matter to Cory Amundson, an employee in the collections department for ASC and Wells Fargo. Amundson then forwarded a copy of the faxed documents to ASC.

Aside from the deficient service issue in the case, ASC also argued that it has a meritorious defense to the debtor's complaint. While admitting that it had attempted to collect payments from Reaves since the case was discharged, ASC stated that it had only attempted to collect post-discharge defaults from the debtor. "Accordingly, there was no need for ASC to adjust its records as the Debtor was current on the indebtedness owed to ASC until events of default occurred after the bankruptcy case was closed."[8]

The first hearing on ASC's motion was conducted on September 10, 2008. The debtor did not appear at that hearing; however, Cindy Shanabrook, a representative from ACS, was present and had traveled from Frederick, Maryland, for the hearing. As a result, the Court bifurcated the hearing with Shanabrook's testimony being given that day. The debtor appeared on October 10, 2008, at which time his testimony was entered into the Court record.

Shanabrook is a Bankruptcy Litigation Specialist from ASC. When an adversary proceeding like the one at issue in this case is filed, Shanabrook receives the file, gathers all necessary information from ASC's computer system records and refers it to an attorney. ASC is a loan servicing company that collects payments on home mortgages and applies the payments to a loan. ASC's current address is 8480 Stagecoach Circle, Frederick, Maryland.

As stated earlier in this opinion, ASC took over the servicing of Reaves' loan from Altegra Credit in December 2003. At that time, ASC's business location was 7495 New Horizon Way, Frederick, Maryland 21703. ASC sent the Chapter 13 Trustee in this case a letter on November 21, 2003, which directed the trustee to remit all payments to ASC at the 981 address. The order substituting ASC for Altegra also listed the 981 address.

ASC's P.O. Box 981 was closed in the fall of 2006. Effective October 1, 2006, all payments for loans in the eastern half of the United States were to be mailed to ASC at P.O. Box 1820, Newark, NJ 07101–1820. ASC's physical address also moved from New Horizon Way to 8480 Stagecoach Circle, Frederick, Maryland, around the same time. At the time Reaves' chapter 13 case was reopened and this adversary proceeding was filed, ASC was no longer using the 981 address to receive mail.

In researching the matter for this hearing, Shanabrook contacted the mail teams for ASC and reviewed ASC's computer systems for any mention of the pleadings in this case. Shanabrook did not find where ASC had ever received any notice of the matter aside from the fax Amundson sent them in December 2007. In reviewing the faxed information, Shanabrook did not see any pleading which was directed to the attention of an officer or agent of ASC. All of the pleadings had been simply served on "America's Servicing Company" at the 981 address. Had ASC received notice of the filing or the judgment, Shanabrook felt certain that ASC would have appeared and defended the action. The debtor did not present any proof that ASC

---

8. See "Motion and Memorandum in Support of America's Servicing Company's Motion for an Order Granting Relief from Judgment of Contempt," docket # 35.

ever received formal notice of the matters in this case.

Turning to the loan payments in Reaves' case, the debtor alleged that ASC had failed to adjust their records to reflect the trustee's payments and had been attempting to collect an incorrect balance since the discharge of his case. When the case was filed, the balance due on the mortgage was $33,539.16. After his case was discharged, ASC showed a balance due of $33,812.31. Given the fact that the trustee disbursed $27,798.79 to ASC for the ongoing mortgage payments in his case, the debtor did not understand why the pre-petition and post-petition balances were so close; however, the debtor admitted at the hearing in this matter that he had not taken into account the loan interest that was constantly accruing during the case. According to Collective Exhibit 2, item G, the debtor financed $34,662.00 with American Mortgage Source on June 12, 1996, at the rate of 12.46% interest. The finance charge for the loan was listed as $42,070.20. As a result, the total payments made over the life of the loan would amount to $76,732.20.

In reviewing ASC's ledger of payments, it appears that ASC received all of the payments from the Chapter 13 Trustee and applied the total amount to either the ongoing mortgage or prepetition arrearage. An amortization schedule prepared on February 9, 2000, showed that the total balance of the loan, including interest, as of May 2005 would have been $31,119.17.[9] An earlier amortization schedule prepared on May 11, 1996, showed that the total balance of the loan as of May 2005 would have been $21,949.99; however this schedule was prepared at the time the loan was made and did not factor in any late pay-ments, missed payments or delinquent interest.[10]

When questioned about ASC's records at the hearing, Shanabrook stated that Reaves was two payments ahead on his mortgage at the time of discharge in May 2005. Because he was two months ahead on his mortgage in May 2005, Reaves did not need to make a payment until August 2005. Reaves failed to make a payment in August or September 2005. Reaves did make a payment in October 2005 and that money was applied to the August 2005 payment. The debtor has been late on every payment since then and has not made a payment since August 2007 according to hearing exhibit 1. All of the defaults at issue in his case are post-discharge defaults.

## II. CONCLUSIONS OF LAW

There are two issues before the Court in this case. First, did this Court have sufficient personal jurisdiction over ASC so as to render the contempt judgment against them valid? Second, did this Court have subject matter jurisdiction to rule on the post-discharge defaults? The Court will analyze the personal jurisdiction question first.

Rule 60(b)(4) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by FED. R. BANK. P. 9024, allows a court to relieve a party from a final judgment when "the judgment is void." FED.R.CIV.P. 60(b)(4). Motions for relief from a judgment under this subsection must be filed "within a reasonable time." FED.R.CIV.P. 60(b). "The validity of a court order depends on the court having jurisdiction over the subject matter and the parties." *Days Inns Worldwide, Inc., v. Patel*, 445 F.3d 899,

---

9. See Hearing Collective Exhibit 2, item R.

10. See Hearing Collective Exhibit 2, item Q.

903 (6th Cir.2006). If a court does not have personal jurisdiction over one of the parties, "the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). Improper service of process renders a judgment obtained thereby void. *Davis v. Bank of New York*, 2008 WL 793589, *1 (E.D.Mich. 2008); *Ruehle v. Educ. Credit Mgmt. Corp. (In re Ruehle)*, 307 B.R. 28, 33 (B.A.P. 6th Cir.2003), *aff'd*, 412 F.3d 679 (6th Cir.2005); *In re Chess*, 268 B.R. 150, 155 (Bankr.W.D.Tenn.2001).

 Turning to the first requirement of FED.R.CIV.P. 60(b), a motion for relief from a judgment filed pursuant to FED. R. CIV. P. 60(b)(4) must be filed "within a reasonable time." What constitutes a "reasonable time" depends on the facts of a given case and should be analyzed by looking at "the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief." *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir.1990). In the case at bar, the debtor obtained his judgment at the September 6, 2007, court hearing. The order of default was entered on the court's docket on November 29, 2007. The adversary proceeding was closed on December 10, 2007. ASC did not learn of the adversary proceeding until December 2007 when the debtor's attorney faxed a copy of the pleadings to ASC's collection department. The debtor moved to reopen his adversary proceeding on December 13, 2007, and entered an amended judgment of contempt on January 25, 2008. The adversary proceeding was then re-closed on February 5, 2008. ASC then moved to re-open the adversary proceeding and set aside the judgment on April 16, 2008. The Court finds that ASC moved quickly to obtain relief from the judgment after learning about the existence of the adversary proceeding. According to Shanabrook's testimony and the documents in this case, ASC did not learn of this adversary proceeding until December 2007. The debtor sent copies of the pleadings in this matter to the 981 address which had been closed in 2006. The debtor did not present any proof that despite this closure, ASC received actual notice of the case until December 2007. The Court finds that the length of the delay as well as the reason for the delay are reasonable in this case.

 Turning to the second prong of the FED.R.CIV.P. 60(b)(4) inquiry, the Court must now determine if the service of process in this case was proper. Proper service of process in adversary proceedings is governed by FED. R. BANKR.P. 7004. Proper service under this rule is necessary for a court to obtain personal jurisdiction over a defendant in an adversary proceeding. *Hogrobrooks v. Texas Guaranteed Student Loan Corp.*, 2008 WL 4442543, *3 (W.D.Tenn.2008) (citing *Omni Capital Intern. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987)). Rule 7004 provides that service may be accomplished by personal service or by first class mail. FED. R. BANKR.P. 7004(a) and (b). There is a presumption that an item which is properly addressed was received by the addressee "when the sender presents proof that the item was properly addressed, stamped, and sent through the United States mail." *Chess*, 268 B.R. at 156; *Bratton v. Yoder Co. (In re Yoder Co).*, 758 F.2d 1114, 1117 (6th Cir.1985). Such presumption may be rebutted by testimony of non-receipt. *Patterson v. Irwin Mortgage Corp. (In re Patterson)*, 330 B.R. 631, 638 (Bankr. E.D.Tenn.2005). " '[A]ctual knowledge of a suit is not a substitute for proper service of process and does not cure a technically defective service of process.' " *Love v. Love*

*(In re Love)*, 232 B.R. 373, 377–78 (Bankr. E.D.Tenn.1999) (citing *Meganck v. Couts (In re Couts)*, 188 B.R. 949, 953 (Bankr. E.D.Mich.1995)).

■ When serving a corporation, partnership, or other unincorporated association by mail, a summons must be mailed "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant." FED. R. BANKR.P. 7004(b)(3). Courts have found that when a pleading was not addressed to an officer by either name or title it is insufficient service under Rule 7004(b)(3). *York v. Bank of America (In re York)*, 291 B.R. 806, 811 (Bankr.E.D.Tenn.2003); *DaShiell v. Ohio Citizens Bank (In re DaShiell)*, 124 B.R. 242, 247 (Bankr. N.D.Ohio 1990). Another court has found that service of process on a parent holding company at a bill-paying address does not satisfy the requirements of Rule 7004(b)(3). *In re Kleather*, 208 B.R. 406 (Bankr.S.D.Ohio 1997). While it is true that some courts, even one in the Western District of Tennessee, have determined that serving a pleading on "the address designated by a creditor on its proof of claim" satisfies Rule 7004(b)(3), this Court finds such a holding inapplicable to the case at bar. In Reaves' case, Altegra filed a proof of claim in 2000. ASC filed a notice of substitution on December 17, 2003. The bankruptcy case was closed in 2005 and the adversary proceeding was filed in 2007. The Court finds that an address which was provided in 2003 cannot be presumed to be the correct mailing address for a business four years later especially when the defendant presented proof that the address had changed in 2006.

In the case at bar, the debtor alleged that service was proper because his attorney had mailed a copy of the summons and pleadings in this case to the address provided by ASC to the Chapter 13 Trustee for remittance of payments. The last payment sent by the trustee to ASC was in May 2005. ASC's representative, Shanabrook, testified that ASC closed the 981 address in 2006. ASC also introduced evidence showing the new lockbox address in Newark, NJ, became effective in October 2006. The summons and other pleadings were sent to "American Servicing Company" with no language directing the document to an officer or agent of ASC. The pleadings were all sent to a lockbox used by ASC for processing payments. ASC obtained actual notice of the adversary proceeding in December 2007. Even if actual notice satisfied the requirements of FED. R. BANKR.P. 7004(b)(3), ASC did not have notice of the adversary proceeding until after the judgment had already been issued against them.

Based on these conclusions, the Court finds that service of process in this case was not proper. The debtor served the summons, pleadings and judgment in this case on an lockbox address which is insufficient to effect proper service. The debtor also failed to address the pleadings to an officer or agent and instead merely addressed the pleadings to "American Servicing Company." This too is insufficient. ASC more than rebutted the presumption of proper service with Shanabrook's testimony of non-receipt coupled with proof that ASC had stopped using the 981 address in October 2006. As a result, the Court finds that it had no personal jurisdiction over ASC at the time the judgment of contempt was rendered. That judgment is hereby declared void.

■ Turning to the second issue in the case at bar, the Court must now deter-

mine if it had subject matter jurisdiction over the matters in the instant adversary proceeding. As Shanabrook's testimony and the exhibits showed, ASC has been attempting to collect post-discharge defaults from Reaves. Bankruptcy courts do not have subject matter jurisdiction to adjudicate certain post-discharge disputes between parties. *Perry v. EMC Mortgage Corp. (In re Perry)*, 388 B.R. 330, 337 (Bankr.E.D.Tenn.2008); *In re Milby*, 389 B.R. 466, 467–68 (Bankr.W.D.Va.2008). Because the mortgage in the case at bar was excluded from the debtor's discharge, the discharge injunction of 11 U.S.C. § 524(a)(2) does not have any application. Additionally, because the default at issue occurred post-discharge and after the automatic stay had been terminated, the dispute does not arise under title 11 nor is it related to the debtor's case. Therefore the court has no jurisdiction to address this matter. This dispute is one which should be handled in state court. The Court will enter a separate order dismissing the complaint.

### III. ORDER

It is therefore **ORDERED** that the defendant's "Motion for Order Granting Relief from Judgment of Contempt" is **GRANTED.** The "Judgment of Contempt" entered on November 29, 2007, and the "Amended Judgment of Contempt" entered on January 25, 2008, are **HEREBY SET ASIDE** and **DECLARED VOID.**

**IT IS SO ORDERED.**