NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0004n.06

No. 16-3345

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ROSEANNE BREEZLEY, | ) | **FILED**<br>Jan 04, 2017<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| HAMILTON COUNTY, et al., | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

Before: McKEAGUE, GRIFFIN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. James Barton, an inmate at the Hamilton County jail, was found dead in his cell in 2013. Barton's mother, Roseanne Breezley, sued the Hamilton County Board of Commissioners ("the Board"), 19 corrections officers, and County Sheriff Jim Neil (collectively, "the County Defendants"). She also brought claims against the jail's medical contractor, NaphCare, Inc., and six NaphCare employees (collectively, "the NaphCare Defendants"). The district court dismissed the claims against the sheriff, all 19 corrections officers, and the NaphCare Defendants for insufficient service of process. We affirm.

I.

In February 2013, Barton was arrested for theft and incarcerated at the Hamilton County Justice Center. The jail psychiatrist, an employee of NaphCare, prescribed him a course of antidepressants. Two months later, a corrections officer saw that Barton had a bloody nose and

asked if he had been in a fight. According to the officer, Barton suggested the nosebleed was due to "dry air." That night, Barton was found dead in his cell.

On April 10, 2015, Breezley sued the County Defendants and the NaphCare Defendants under 42 U.S.C. § 1983. Breezley's complaint attributed Barton's death to an interaction between heroin and the antidepressant he was taking and alleged (among other things) that the defendants had violated Barton's Eighth Amendment right to adequate medical care.

The filing of that complaint started the 120-day clock for service of process under Federal Rule of Civil Procedure 4(m) (2015 version). More than 90 days later, Breezley's attorney, Jaceda Blazef, asked the court clerk to issue the summonses (which are forms notifying a defendant he has been sued) by certified mail. Accordingly, the clerk sent summonses for the NaphCare Defendants, including the individual employees, to NaphCare's agent for corporate service of process, and summonses for the County Defendants (except the Board) to the Hamilton County Justice Center. Breezley received certified-mail receipts for three defendants: the Board, corrections officer Jessica Jones, and Sheriff Neil.

The County Defendants thereafter moved to dismiss the claims against Sheriff Neil and the corrections officers for insufficient service of process. In November 2015, the district court issued a show-cause order requiring Breezley to explain why her claims should not be dismissed for lack of service. Blazef then began investigating why service on most of the defendants had failed. She discovered that a mailroom employee at the jail, James Healey, had signed for a package containing many of the summonses. She then filed as proof of service a series of tracking printouts from the U.S. Postal Service—each bearing Healey's signature, an address, and a sixteen-digit tracking number corresponding to one of the numbers on the certified-mail receipts that had been sent out several months earlier.

Blazef also obtained an affidavit from Healey declaring that he was "an agent of the Hamilton County Sheriff's Department authorized to accept service." R. 33-1. Healey stated that he had "signed and accepted service" on behalf of 17 listed corrections officers on July 22, 2015, and that he had provided them with the documents.

The County Defendants then filed a series of affidavits in support of their motion to dismiss. All the corrections officers, except Jessica Jones and Joel Siebert, provided affidavits stating that they had never authorized Healey to accept service of process on their behalf and denying that they had received summonses from Healey. Meanwhile, an administrative assistant at the jail stated in an affidavit that Siebert had retired in June 2015. R. 41-1.

The County Defendants also filed a second affidavit from Healey, who clarified that his job was to handle inmate mail, not mail for jail employees, and that he was "not an authorized agent to accept service of process for anyone." R. 41-3. He acknowledged signing for certified mail addressed to employees on July 22, 2015, but said he did not know what was in the envelopes and never gave them to the addressees.

The NaphCare Defendants likewise moved to dismiss for insufficient service of process. Following a show-cause hearing, at which Blazef recounted her efforts to effect service on both sets of defendants, the district court dismissed the claims against all the relevant defendants here—Sheriff Neil, the corrections officers, and the NaphCare Defendants—for insufficient service of process. Breezley now appeals.

II.

We review de novo a district court's legal conclusions about the adequacy of service, but review for clear error any relevant factual findings. *See Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004). Under Rule 4, if a defendant is not timely

served, the court may dismiss the action against that defendant. Fed. R. Civ. P. 4(m). To serve an individual defendant, a plaintiff may (among other methods) have the papers delivered to the individual personally, deliver them to the individual's agent for service of process, or follow state-law procedures for service of process. Fed. R. Civ. P. 4(e). The plaintiff bears the burden of proving that service was proper. *See Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).

A.

Breezley first argues that she served the corrections officers within the 120-day period for service. *See* Fed. R. Civ. P. 4(m) (2015 version). Breezley filed her original complaint on April 10, 2015, so she had until August 10, 2015 to complete service. *See id.*; Fed. R. Civ. P. 6(a)(1).

Breezley argues that she properly served the corrections officers in three ways. First, Breezley contends that service was effected in July 2015 when Healey received the summonses because, per Healey's first affidavit, he was an agent for service of process. *See* Fed. R. Civ. P. 4(e)(2)(C). But that affidavit says only that Healey was "an agent . . . authorized to accept service," not that he was authorized to accept service specifically on behalf of the corrections officers. In his second affidavit, Healey clarified that his job was to handle mail for inmates, not jail employees, and that he was "not an authorized agent to accept service of process for anyone." The district court also found the circumstances surrounding the execution of Healey's first affidavit "highly questionable": specifically, as Healey explained in his second affidavit, he did not know what "agent" or "accepting service" meant when he signed the first affidavit. Given the lack of evidence that Healey was the officers' agent for service of process, the district court did not err in concluding that Healey was not authorized to accept service on their behalf.

Second, Breezley contends that service was proper because, Breezley says, Healey served the corrections officers "personally." *See* Fed. R. Civ. P. 4(e)(2)(A). Healey's first affidavit says that he "promptly provided" the summonses and complaints to the addressees. Per his

second affidavit, however, Healey never gave the envelopes to the addressees. Healey explained that he had signed the first affidavit because he "remembered signing for the mail" in July 2015. But signing for mail is not the same as delivering it "personally." And nearly all the corrections officers filed affidavits stating that Healey never served them. Given this evidence, Breezley failed to meet her burden of showing that the corrections officers received personal service.

Breezley responds that the officers should be "estopped" from denying the allegations in Healey's first affidavit because, in Breezley's view, the affidavit was a binding "judicial admission." Breezley did not present this argument to the district court, and thus cannot raise it here. *See McFarland v. Henderson*, 307 F.3d 402, 407 (6th Cir. 2002). Moreover, the argument is meritless: neither the corrections officers nor their attorneys ever stipulated to the allegations in Healey's first affidavit, which means that those allegations are not judicial admissions. *See Lee v. Smith & Wesson Corp.*, 760 F.3d 523, 528 (6th Cir. 2014).

Third, Breezley contends that she served the corrections officers by certified mail. Although Rule 4 itself does not authorize service by mail, Rule(4)(e)(1) permits service pursuant to the law of the state in which the district court is located (here, Ohio). Ohio law allows certified-mail service "[e]videnced by return receipt signed by *any person*." Ohio Civ. R. 4.1(A)(1)(a) (emphasis added). A signed return receipt raises a presumption of proper service, which can be rebutted with evidence that service never occurred. *See Ohio Civ. Rights Comm. v. First Am. Properties, Inc.*, 680 N.E.2d 725, 729 (Ohio Ct. App. 1996); *TCC Mgmt., Inc. v. Clapp*, 2005 WL 2008677, at **3-4 (Ohio Ct. App. 2005) (gathering cases).

Here, with the exceptions of Jones and Siebert, every corrections officer named in Healey's first affidavit submitted affidavits of their own denying that Healey had given them the envelopes. Healey's second affidavit corroborated that testimony. Moreover, according to one

of Siebert's co-workers, Siebert retired in June 2015, before Healey signed for the package. Thus, Breezley failed to meet her burden of proving timely service on 18 of the 19 officers.

That leaves Jones, as to whom Breezley did present a return receipt for service by certified mail. But the district court found that the signature on the receipt was illegible. And on appeal Breezley does not even mention that finding, let alone offer any argument as to why it was erroneous. Breezley therefore has not established that she served any of the corrections officers.

B.

Breezley next argues that she demonstrated "good cause" for her failure to serve the corrections officers within the 120 days permitted by court rule. *See* Fed R. Civ. P. 4(m) (2015 version). We review for abuse of discretion the district court's refusal to extend the time for service. *See Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 521 (6th Cir. 2006).

Breezley had the burden of showing the delay was the result of "good cause," such as when a defendant willfully evades service or a pro se plaintiff suffers from a serious illness. *See, e.g.*, *Habib v. Gen. Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991). In contrast, a lawyer's "inadvertent failure" or "half-hearted efforts" to effect service are not good cause. *Friedman*, 929 F.2d at 1157-58.

Breezley asserts that her attorney's "extraordinary" efforts at service demonstrate good cause. Judging from the record, however, those efforts were more dilatory than diligent. A month after Breezley filed her complaint, the district court alerted her that none of the defendants had been served. Breezley's attorney did nothing as to service for another two months. Then, less than 30 days before the deadline, she sent the summonses by certified mail to the jail and hoped for the best. When most of the mail receipts did not come back, Breezley's attorney made

-6-

no effort to find out why for another three months, by which time she was over 90 days past the deadline for service. And Breezley cites no extenuating circumstances for any of this delay.

Breezley counters that corrections officers are hard to serve because their home addresses are not subject to disclosure under Ohio's public-records law. *See State ex. rel. Dispatch Printing Company v. Johnson*, 833 N.E.2d 274, 284 (Ohio 2005). But Breezley could have hired a process server or asked the county prosecutor (as the officers' counsel in this case) to waive service on the officers' behalf, as the prosecutor assures us he routinely does. *See generally* Fed. R. Civ. P. 4(c)(3), (d). Breezley offers no evidence that she did any of these things. Suffice it to say that the district court did not abuse its discretion finding no good cause for delay.

C.

That leaves Sheriff Neil and the NaphCare Defendants. Breezley does not mention Sheriff Neil at all in her brief on appeal. As to the NaphCare Defendants, she only offers a conclusory assertion that they were "personally served." Even that putative service, however, came nearly five months after the deadline for service. Breezley offers no explanation for the delay. And yet the NaphCare Defendants had to defend themselves in this appeal by filing a brief and appearing at oral argument.

As officers of the court, Breezley's counsel had an obligation not to "multipl[y] the proceedings" in this appeal "unreasonably and vexatiously." 28 U.S.C. § 1927; *see also* Fed. R. App. P. 38. It appears (though we do not formally so find here) that Breezley's counsel did precisely that as to the NaphCare Defendants.

\*     \*     \*

The district court's judgment is affirmed.