NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0355n.06

Case No. 21-2684

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 24, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TIFFANY L. SAVOIE; NATALIE HOOPER, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| CITY OF EAST LANSING, MICHIGAN; ADAM | ) | DISTRICT OF MICHIGAN |
| PARK, MATTHEW SWAB, and JEFF MURPHY, | ) | |
| in their individual and official capacities, | ) | |
| | ) | |
| Defendants-Appellees. | ) | OPINION |
| | ) | |

Before: MOORE, COLE, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Under a now-invalid city ordinance, officers from the East Lansing Police Department arrested Tiffany Savoie and Natalie Hooper for being within 300 feet of a fire. More than three years after the arrest, Savoie and Hooper sued the City of East Lansing, the two arresting officers, the former Interim Police Chief, and several unnamed officers. But the process server did not serve any of the officers individually; instead he served the Deputy Chief of the Police Department, who was not named in the suit.

The district court granted the Defendants' motion to dismiss for insufficient service of process, and in the alternative if service was proper, on the merits. We agree that, except for the City, Savoie and Hooper failed to properly serve the individual officers and affirm on that ground. And as for the claims against the City, Savoie and Hooper have abandoned that argument on appeal. Thus, we affirm the district court's judgment.

**I.**

Because this is an appeal from a motion to dismiss, we take the facts in the Amended Complaint as true. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 720 (6th Cir. 2010). But that holds true only for factual allegations, not legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). So the facts below follow from the factual allegations set out in the Amended Complaint.

*The Arrest.* Savoie and Hooper[1] pulled into a parking space when they noticed a small fire burning nearby. Hooper took out her phone to look up the fire department's emergency number. As Hooper was on her phone, Police Officer Adam Park noticed Hooper and accused her of photographing the fire and accused both Savoie and Hooper of violating East Lansing's Ordinance Section 26-52(31).[2] Then Officer Park and Officer Matthew Swab charged toward the women, and one of the officers tackled Hooper to the ground. Even though Savoie and Hooper explained that they did not start the fire and were not taking pictures, the officers arrested them and took them to jail. There, two female officers searched Savoie and Hooper.

Savoie and Hooper were charged with violating the Ordinance. They moved to dismiss the charges, arguing that the Ordinance was unconstitutional. The state court agreed and dismissed the charges.

*Procedural History.* More than three years later, Savoie and Hooper filed a complaint against the City of East Lansing, Officers Park and Swab, Interim Police Chief Jeff Murphy, the

---

[1] Natalie Hooper was formerly known as Natalie Williams and that is how most of the record refers to her. But we use her current name here.

[2] Relevant here, the Ordinance made it unlawful to be "within 300 feet of a . . . fire . . . [unless] attempting to put out or contain the fire prior to the arrival of firefighting personnel, firefighters, police officers, or other emergency personnel." (R. 5-1, State Ct. Op., PageID 37.)

two female officers, and ten other unnamed officers. Savoie and Hooper alleged, among other things, First, Fourth, and Fourteenth Amendment violations under 42 U.S.C. § 1983, a common law right to resist unlawful arrest, and an unlabeled claim against the City. But this complaint was defective in several ways. It included no proposed summons request as required by Federal Rule of Civil Procedure 4(a), and Savoie and Hooper did not pay a filing fee. What's more, the complaint included no factual allegations about the ten unnamed officers, and the only reference to the female officers amounted to the officers "thoroughly and intrusively" searching Savoie and Hooper upon their arrival to jail. (R. 1, Compl., PageID 5.)

Two months later, the district court issued a Notice of Impending Dismissal advising Savoie and Hooper that their complaint would be dismissed without prejudice if they failed to advise the court that they had completed service of process by January 16, 2018—90 days after filing the complaint. Eighty-nine days after filing their first complaint, Savoie and Hooper filed a ten-count amended complaint that no longer included the ten officers. On the same day, they submitted proposed summonses and proofs of service. But their process server never served any of the individual officers; instead he served Deputy Police Chief Steve Gonzalez on their behalf. The proof of service stated that Gonzalez was "designated by law to accept service of process on behalf of" the other officers. (R. 8, Proof of Service, PageID 68-72.)

The Defendants moved to dismiss, arguing both insufficient service of process and failure to state a claim. The district court agreed and granted the motion to dismiss on both grounds. On the service point, the district court found that Savoie and Hooper did not show "good cause" for their insufficient service, and then the court declined to exercise its discretion to grant an extension to perfect service.

## II.

On appeal, Savoie and Hooper argue that the district court erred in dismissing their complaint. Although the district court addressed the merits of each claim, we will do so only for the claims against properly served Defendants.

### A.

We begin with the district court's dismissal for insufficient service of process. *See* Fed. R. Civ. P. 12(b)(5). Service requirements are more than mere technicalities, they also implicate due process. *See Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991). So we hold plaintiffs to a high standard and require more than just actual knowledge of the action by a defendant for proper service. *See id.* And the "plaintiff bears the burden of proving that service was proper." *Breezley v. Hamilton County*, 674 F. App'x 502, 505 (citing *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996)).

When reviewing dismissals for insufficient or untimely service, we start by reviewing the district court's "legal conclusions about the adequacy of service" de novo and factual findings for clear error. *Breezley*, 674 F. App'x at 505 (citing *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004)); *see also LSJ Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 322 (6th Cir. 1999). Then we review the district court's good-cause determination (and subsequent decision to dismiss) for an abuse of discretion. *See Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 521 (6th Cir. 2006).

Federal Rule of Civil Procedure 4 is key. To serve an individual, a plaintiff must follow either the state law governing service or do any of the following with the summons: (1) deliver a copy to the individual personally, (2) leave a copy at the individual's "dwelling or usual place of abode" with a suitable person, or (3) deliver a copy to an agent authorized by appointment or law

to receive service. *See* Fed. R. Civ. P. 4(e). If the plaintiff does not serve the defendant within 90 days after filing the complaint, the district court must dismiss the action without prejudice or order that proper service be made. *See* Fed R. Civ. P. 4(m). But if the plaintiff shows good cause for the deficient service, the district court must extend the time for service. *Id.*

What may a court do if the plaintiff does not show good cause for the deficient service? We have explained that Rule 4 permits the district court discretion to either allow late service or dismiss the case without prejudice. *See United States v. Oakland Physicians Med. Ctr., LLC*, No 22-1011, 2022 WL 3335658, at *2 (6th Cir. Aug. 12, 2022); *see also Henderson v. United States*, 517 U.S. 654, 658 n.5, 662–63 (1996).

**B.**

With that in mind, Savoie and Hooper could have served the Defendants in several ways. They could have followed Michigan law, for instance, or they could have chosen one of the three ways set out in Rule 4(e)(2). In the end, they chose none of the above.

*State law*. Under Michigan law, a plaintiff must serve an individual by either delivering summons and a copy of the complaint to the defendant personally, or by registered mail. *See* Mich. Ct. R. 2.105(A). Savoie and Hooper admit that they did not take this route. Instead, they argue that their service followed a different method of service under Michigan law—service of a public corporation. *See* Mich. Ct. R. 2.105(G). Under this rule, service of process to a municipal government or public body can be made to stand-ins for government defendants, like mayors, city clerks, supervisors, or "an officer having substantially the same duties as those named or described above." *Id.* 2.105(G)(2), (8).

By serving Deputy Chief Gonzalez, Savoie and Hooper argue that they satisfied Michigan law under Rule 2.105(G). True, Gonzalez's role is like the titles listed in Rule 2.105(G). But that

helps Savoie and Hooper only if they were serving the Police Department, for example. Instead, they were serving police officers, who are not "public corporations." So Savoie and Hooper needed to follow Rule 2.105(A), which they did not do.

*Rule 4(e)(2).* With state law out of the mix, Savoie and Hooper still have a few avenues left for proper service: personal service, service at home, or service to an authorized agent. *See* Fed. R. Civ. P. 4(e)(2). Nobody disputes that the plaintiffs did not use the first two methods. This leaves the third option. But for this method to succeed, Gonzalez must have been an agent authorized by appointment or law to receive service on behalf of the individual officers.

But Savoie and Hooper do not rely on this method, instead they put almost all of their eggs in the state-law basket. They offer no argument that Gonzalez was authorized to accept service besides the conclusory statement that "there can be likewise no question that a deputy chief of police can accept service of process on behalf of his subordinates." (Appellants' Br. at 12.) In the same conclusory vein, Savoie and Hooper assert that "Michigan law . . . expressly provides for a person in a management position to accept service on behalf of his subordinates." (*Id.*) But they offer no specifics in support of either proposition. If anything, it appears that they are glomming their argument about serving public corporations onto the service of authorized agents. But again, Michigan Court Rule 2.105(G) is inapposite here.

Because Savoie and Hooper do not offer any authority that Gonzalez was authorized by the officers, or by law, to accept service on the individual officers' behalf, they have not met their burden. *See Breezley*, 674 F. App'x at 505 (finding that the district court did not err in concluding that a person was not an authorized agent "[g]iven the lack of evidence"); *see also* 4A Wright & Miller, *Federal Practice and Procedure* § 1097 (4th ed. 2021) (finding that cases on agency by appointment "indicate that an actual appointment for the specific purpose of receiving process

6

normally is expected"). So the district court did not err in concluding that Gonzalez was not authorized to accept service on behalf of the individual officers.[3]

## C.

That the service was insufficient does not end our inquiry. A plaintiff can still try to excuse his deficient service by showing "good cause for the failure." Fed. R. Civ. P. 4(m). We review a district court's good-cause conclusion for an abuse of discretion. *Nafziger*, 467 F.3d at 521. "Abuse of discretion is a highly deferential standard," so we will reverse the district court only when it improperly applied the law, relied on clearly erroneous facts, or used an incorrect legal standard. *Doe v. Mich. State Univ.*, 989 F.3d 418, 426 (6th Cir. 2021). The burden of proving good cause is with the plaintiffs. *See Nafziger*, 467 F.3d at 521.

In general, good cause means "a reasonable, diligent effort" at proper service. *Johnson v. Smith*, 835 F. App'x 114, 115 (6th Cir. 2021) (internal quotation omitted). "[C]ounsel's inadvertent failure or half-hearted efforts to serve a defendant . . . does not constitute good cause." *Friedman*, 929 F.2d at 1157. Nor does actual notice of service or a lack of prejudice to the defendant constitute good cause. *See Johnson*, 835 F. App'x at 115; *Moncrief v. Stone*, 961 F.2d 595, 597 (6th Cir. 1992).

So what constitutes good cause? A touchstone example is "when the defendant intentionally evades service of process," *Friedman*, 929 F.2d at 1157, or if there is an error on the court's part, *see Byrd*, 94 F.3d at 220. We have also found good cause when a pro se plaintiff

---

[3] Our conclusion would be the same even if Savoie and Hooper pressed the argument that Gonzalez had represented to the process server that he was authorized to accept service. "[C]laims by an agent of having authority to receive process or the fact that an agent actually accepts process is not enough" without "evidence that the defendant intended to confer that authority." 4A Wright & Miller, *Federal Practice and Procedure* § 1097 (4th ed. 2021) (footnotes omitted); *see also Schollenberger v. Sears, Roebuck & Co.*, 876 F. Supp. 153, 156 (E.D. Mich. 1995) (citing *Whisman v. Robbins*, 712 F. Supp. 632, 636 (S.D. Ohio 1988)).

suffers from a serious illness. *See Habib v. Gen. Motors Corp.*, 15 F.3d 72, 73–75 (6th Cir. 1994). Common in all these examples is that something outside the plaintiff's control prevents timely service. But we do not have anything like that here.

Even putting aside the three-year wait from the incident to the filing of the first defective complaint, the district court considered Savoie and Hooper's arguments about good cause. It rejected their arguments about actual notice, Gonzalez's supervisory role, and the practice of serving police officers at police stations. In the end, the court concluded that Savoie and Hooper failed to show good cause through their lack of due diligence in determining whether Gonzalez was authorized to accept service for the officers.

## D.

Savoie and Hooper do not challenge the district court's good-cause determination. Instead, they contend that the district court erred by not granting them an extension regardless. They are correct that a district court, even in the absence of good cause, can exercise discretion to extend the time. *See Oakland Physicians*, 2022 WL 3335658, at *2. And district courts in our circuit have done so. *See, e.g.*, *Rose v. Bersa*, 327 F.R.D. 628, 635 (S.D. Ohio 2018) (collecting cases); *Tanksley v. Tenn. Valley Auth.*, No. 1:16-CV-489, 2017 WL 6391473, at *6–9 (E.D. Tenn. Dec. 14, 2017) (extending time to complete service); *Slenzka v. Landstar Ranger, Inc.*, 204 F.R.D. 322, 326 (E.D. Mich. 2001) (listing five factors for courts to consider); *Wise v. Dep't of Defense*, 196 F.R.D. 52, 55–56 (S.D. Ohio 1999) (collecting cases from other circuits doing the same). This rule tracks with Supreme Court guidance that, "for almost all rules prescribing a deadline, a district court may 'extend the time' even 'after the time has expired.'" *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172, 2178 (2021) (quoting Fed. R. Civ. P. 6(b)(1)); *see also* Fed. R. Civ. P. 4, 2015 Advisory Committee Notes, Subdivision (m) (explaining that

shortening the time for service from 120 days to 90 days "will increase the frequency of occasions to extend the time").

With that in mind, Savoie and Hooper argue that the district court erred by not considering a specific five-factor test when it rejected their request to extend the time to perfect service. *See Slenzka*, 204 F.R.D. at 326. And they ask us to remand so that the district court can apply this test. But even though we have acknowledged the district courts' discretion to extend time, *see Stewart v. Tenn. Valley Auth.*, 238 F.3d 424, at *1 (6th Cir. 2000) (table); *Williams v. Smith*, 191 F.3d 454 (6th Cir. 1999) (table), we have not, until very recently, said how courts should use that discretion, *see Oakland Physicians*, 2022 WL 3335658, at *3.

In *Oakland Physicians*, we concluded that district courts should consider seven factors when deciding whether to grant a discretionary extension without good cause:

> (1) whether an extension of time would be well beyond the timely service of process;
>
> (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit;
>
> (3) whether the defendant had actual notice of the lawsuit;
>
> (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, i.e., would the plaintiff's lawsuit be time-barred;
>
> (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies;
>
> (6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and
>
> (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

*Id.* Here, the district court mentioned the five *Slenzka* factors, which resemble five of the seven factors from *Oakland Physicians*. And although the court did not discuss each factor in detail, it is apparent that the court was aware of them, and we have no reason to doubt that it considered them.

Our review of the factors confirms as much. In this case, some of the factors favor Savoie and Hooper—any extension granted would not go far beyond the 90-day limit, the officers would likely not be prejudiced, the officers had notice of the suit, and Savoie and Hooper's claims are now time-barred. On the other hand, Savoie and Hooper offered no reason for waiting until the very end of the time period to serve the officers, they were represented by counsel, and they did not attempt to understand Michigan law when effecting service. Indeed, most, if not all, of Savoie and Hooper's troubles are their own. And that speaks to the last factor from *Oakland Physicians* about equitable circumstances. The three-year delay in filing, the defects in the initial complaint, and the lack of due diligence in serving the right people all counsel against an extension. The district court did not abuse its discretion in so finding.

**III.**

With that, only the claim against the City of East Lansing—who concedes proper service— remains. But this claim fares no better.

Even though Savoie and Hooper failed to label any of the counts in their complaint as claims against the City, the district court construed their complaint as raising a claim of municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). That construction was generous, given that Savoie and Hooper's only nod to the City's liability were a brief statement that the City was responsible for the East Lansing Police Department's rules and regulations and fleeting references to the officers having acted in accord with the City's unspecified policies and practices.

Under *Monell*, a litigant must show a constitutional deprivation because of a municipal policy or custom. *See Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016). Savoie and Hooper could have done so by referencing the City's official policies, actions taken by City

officials with "final decision-making authority[,]" a "policy of inadequate training or supervision[,]" or a "custom of tolerance or acquiescence of federal rights violations." *Id.* But they merely offered a "formulaic recitation of the elements" of a *Monell* claim (and not even all the elements). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And on appeal, Savoie and Hooper decline to even cite *Monell* in their briefing or offer any arguments about municipal liability. So they have abandoned the issue. *See Hardrick v. City of Detroit*, 876 F.3d 238, 244 (6th Cir. 2017) (holding that *Monell* claims are generally abandoned when not raised in the appellant's opening brief).

## IV.

We affirm the district court's dismissal of all claims.